**UNITED STATES of America**

v.

**RYAN, James, Appellant.**

No. 87–1069.

United States Court of Appeals, Third Circuit.

Argued July 16, 1987.

Decided Sept. 15, 1987.

---

Ronald K. Noble (argued), Asst. U.S. Atty., Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Philadelphia, Pa., for appellee.

John Rogers Carroll (argued), Thomas Colas Carroll, Peter Cooley, Carroll & Carroll, Philadelphia, Pa., for appellant.

Before SLOVITER, STAPLETON and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

James Ryan appeals from his conviction for making false statements to a federally insured bank in violation of 18 U.S.C. § 1014 (1982) ("§ 1014"). In this appeal we must consider 1) whether an arguably true answer to an ambiguous question on a loan application can form the basis of a conviction under § 1014, 2) whether an ambiguous answer to an unambiguous question on a loan application can serve as the basis for a conviction under § 1014, and 3) whether an incomplete answer to a question on a loan application can support a conviction under § 1014. For reasons stated below, we will reverse the judgment of conviction and remand for a new trial.

### I.

In February of 1982, James Ryan went to the Egg Harbor branch of the First National Bank of Toms River, New Jersey ("the bank") and spoke to the branch manager, Christine Anderson Auriemma.

Ryan told Auriemma that he wanted to open a checking account. While gathering the information necessary to open an account, Auriemma asked Ryan to furnish his Social Security number. Ryan responded that he was not an American citizen and that he did not have a Social Security number. Auriemma informed Ryan that he could not open an account without a Social Security number. She suggested, however, that Ryan could have a friend open an account on Ryan's behalf and Ryan could take power of attorney on the account. Ryan took Auriemma's advice and had a friend, Gerald Connelly, open an account for him.

On or about February 25, 1982, James Ryan submitted a credit card application to the bank. The application required Ryan to supply various items of personal information such as his name, address, telephone number, Social Security number, date of birth, etc. However, Ryan failed to indicate his Social Security number on the application; instead, he drew a diagonal line through the space provided for that purpose.

Also on the application there is a space in which the applicant is to indicate his "PREVIOUS ADDRESS (last 5 years)." In this space, Ryan wrote "Amtsgasse # 2, Frankfurt West Germ," which, in fact, is the address that appears on Ryan's passport and his visa into the United States. He further indicated that this had been his address for a period of ten years.

A few lines further down on the application is a heading that instructs the applicant to "LIST ALL OUTSTANDING DEBTS including home mortgage." Under this heading there are four blank lines on which the applicant is expected to provide the names and addresses of his creditors, the original amount of each debt, the unpaid balance of each debt, and the monthly payments on each debt. On the first such line, Ryan stated that he has monthly mortgage and/or rental payments of one thousand dollars. He did not indicate, however, the identity of the mortgagee or the amount of the original mortgage or the

unpaid balance of the debt. Ryan listed no other debts. In another section of the application, however, Ryan responded affirmatively to the question, "Does applicant owe other creditors?"

Ryan mailed the application and an attached letter to Auriemma. The letter was written on Ryan's personal stationery, and the letterhead contained a Philadelphia address. On the application, however, Ryan stated that his address was in Egg Harbor. In fact, Ryan did maintain homes in both Egg Harbor and Philadelphia. In the letter, Ryan said that he would be willing to pledge a certificate of deposit as collateral for the credit card account. He also furnished a list of some of the credit cards that he already possessed, and he stated that Auriemma could call any of the listed credit card companies in order to verify his creditworthiness. Ultimately, however, the bank denied Ryan's request for a credit card.

On February 14, 1985, a federal grand jury in the Eastern District of Pennsylvania handed down a two count indictment charging that, in connection with the credit card application, Ryan committed mail fraud in violation of 18 U.S.C. § 1341 (1982) and made false statements to a federally insured bank in violation of 18 U.S.C. § 1014 (1982). Count one, the mail fraud count, averred that Ryan devised a scheme to defraud the bank by means of false representations, both oral and written. Count one further alleged that in furtherance of the scheme, Ryan caused the credit card application to be sent to the bank via the United States mails and that the credit card application contained three false statements:

(1) "[it] stated that he (Ryan) had no Social Security number, when in fact he has had Social security number 506–20–8048 since March 9, 1942;"

(2) "[it] stated that his previous address for a ten year period had been in Frankfurt, West Germany, when in fact he had resided at various locations in the United States for at least four years prior to making this application;"

(3) and "[it] stated that he had no debts other than a mortgage, when in fact he owed approximately $1,700,000 to the State Street Bank and Trust Co. in Boston, Massachusetts and approximately $200,000 to other creditors."

Indictment at 1–2. Count two, the false statements count, averred that the three above mentioned statements also constituted a violation of 18 U.S.C. § 1014 (1982). While count one alleged that Ryan made both oral and written misrepresentations, count two was based solely on the three written statements in the credit card application.

The case was tried before a jury and the Honorable James T. Giles. The jury returned a verdict of not guilty on count one but found Ryan guilty on count two. A judgment of conviction and sentence was entered, and this appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

II.

In order to obtain a conviction under § 1014, the government must establish the following: (1) that the defendant made a "false statement or report or willfully overvalue[d] any land property or security," (2) that he did so "for the purpose of influencing in any way the action of [a federally insured bank or other enumerated financial institution] upon any application, advance, ... commitment or loan," and (3) that the false statement was material, *i.e.*, that it had the capacity to influence such bank or financial institution.[1] *United*

---

1. In *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), the Supreme Court reviewed a conviction under § 1014. While listing the elements of the government's proof, the Court failed to mention the "materiality" element. Prior to *Williams*, this court and various other Courts of Appeals held that a false statement must be material in order to support

a conviction under § 1014. *Goberman*, 458 F.2d at 229; *see, e.g., United States v. Braverman*, 522 F.2d 218 (7th Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975); *United States v. Phillips*, 606 F.2d 884 (9th Cir. 1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980). Though the Supreme Court in *Williams* did not explicitly state that a

*States v. Goberman,* 458 F.2d 226, 229 (3d Cir.1972). The parties have stipulated that the First National Bank of Toms River is a financial institution that falls within the coverage of § 1014.

Ryan's primary argument on appeal is that, under *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), none of the three statements enumerated in the indictment may be considered "false statements" for purposes of § 1014. *Bronston* is a case which arose under the federal perjury statute, 18 U.S.C. § 1621 (1982). The defendant's perjury conviction was based on the following answers given by him as a witness in a bankruptcy proceeding:

Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?

A. No, sir.

Q. Have you ever?

A. The company had an account there for about six months, in Zurich.

Q. Have you any nominees who have bank accounts in Swiss Banks?

A. No, sir.

Q. Have you ever?

A. No, sir.

*Bronston,* 409 U.S. at 354, 93 S.Ct. at 598. In fact, Bronston had possessed a personal Swiss bank account for several years. Thus, his answer that "the company had an account" was unresponsive and misleading—though literally true. Reversing Bronston's conviction, the Supreme Court held that the perjury statute does not cover testimony which is literally true but unresponsive even if the witness had the intent to mislead. The Court reasoned that the adversary system, not the perjury statute, is the safeguard against such errant testimony: "we perceive no reason why Congress would intend the drastic sanction of a perjury prosecution to cure a testimonial mishap that could readily have been reached with a single additional question by counsel alert—as every counsel ought to be—to the incongruity of petitioner's unresponsive answer.... If a witness evades, it is the lawyer's responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination." *Id.* at 358–59, 93 S.Ct. at 599–600.

In *United States v. Tonelli,* 577 F.2d 194 (3d Cir.1978), we held that the *Bronston* rule applies not only to perjury prosecutions under 18 U.S.C. § 1621 but also to prosecutions under 18 U.S.C. § 1623 (1982), which prohibits the making of false declarations before a grand jury or court. Ryan urges us to go further and to hold that the *Bronston* rule also applies to cases arising under § 1014. We note that the *Bronston* rule assumes the availability of an alert legal adversary who can bring the evasive witness "back to the mark." While this may be a valid assumption in the context of a § 1621 or a § 1623 prosecution, the same cannot be said of cases under § 1014, in which the putatively false statement is generally made in the informal context of a bank loan application. Thus, it is at least questionable whether *Bronston* should apply to § 1014 prosecutions. *But see United States v. Attick,* 649 F.2d 61, 63 (1st Cir.) (suggesting that the "literal truth defense is available in § 1014 prosecutions), *cert. denied,* 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981). However, we need not resolve that question now because, even if *Bronston* is generally applicable to cases arising under § 1014, it would only be operative in those cases in which the defendant has been accused of making a statement that is both unresponsive and literally true. *See United States v. Lighte,* 782 F.2d 367, 374 (2d Cir.1986). As will be discussed more fully below, we do not believe that any of Ryan's statements can be characterized as unresponsive and literally true;

false statement must be material in order to support a § 1014 conviction, we do not view the omission as an implicit rejection of the materiality requirement. Since *Williams,* various circuits have assumed the continued vitality of the requirement, *e.g., United States v. Whaley,* 786 F.2d 1229, 1231 (4th Cir.1986); *United States v. Stephens,* 779 F.2d 232, 237 (5th Cir.1985), and in *United States v. Greber,* 760 F.2d 68, 73 (3d Cir.), *cert. denied,* 474 U.S. 988, 106 S.Ct. 396, 88 L.Ed.2d 348 (1985), we held that materiality is an essential element of a false statements violation under 18 U.S.C. § 1001 (1982). Accordingly, we will continue to adhere to our pre-*Williams* position that a § 1014 conviction must be based on proof of a *material* false statement.

therefore, *Bronston* is inapplicable under these facts.

## III.

■ Though we reject Ryan's *Bronston* argument, we must nonetheless reverse the judgment of conviction and remand the case to the district court for a new trial. As stated earlier, count two alleged that Ryan made three distinct false statements. At trial, the government presented evidence on all three factual theories, and the jury was instructed that if it found beyond a reasonable doubt that any one of the three theories was correct, then it should return a guilty verdict. The jury returned a general verdict of guilt on count two, and because the verdict was a general verdict, it is impossible for us to know which factual theory formed the basis of the conviction. In *United States v. Dansker*, 537 F.2d 40, 51 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), we held that a conviction under a given count must be reversed if the count was submitted to the jury on alternative theories, one of which, in retrospect, was insufficient to justify a conviction. *See also United States v. Brown*, 583 F.2d 659, 669 (3d Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). For reasons stated below, we find that the theory involving Ryan's statement about his previous address may not form the basis for a conviction under § 1014. Thus even though the other two theories are proper bases for a § 1014 conviction, we are required under *Dansker* to reverse and remand the case.

### A. The Statement Concerning Ryan's Previous Address.

■ Ryan contends that the question on the application asking for Ryan's previous address was inherently ambiguous, and, therefore, his answer to that question cannot be a "false statement" within the meaning of § 1014. As a general rule, the fact that there is some ambiguity in a falsely answered question will not shield the respondent from a perjury or false statements prosecution. *See United*

States v. Slawik*, 548 F.2d 75, 86 (3d Cir. 1977); *United States v. Long*, 534 F.2d 1097, 1101 (3d Cir.1976). Normally, it is for the petit jury to decide which construction the defendant placed on the question. *Slawik*, 548 F.2d at 86. However, these general rules are not without limit, and if a question is excessively vague or "fundamentally ambiguous," then the answer to such question may not, as a matter of law, form the basis of a perjury or false statements prosecution. *Lighte*, 782 F.2d at 375; *Slawik*, 548 F.2d at 86. The purpose behind the rule of fundamental ambiguity is two-fold: 1) to preclude convictions that are grounded on little more than surmise or conjecture, and 2) to prevent witnesses (or loan applicants) from unfairly bearing the risks associated with the inadequacies of their examiners, and thereby to encourage participation in the judicial (or banking) system. *Cf. Bronston*, 409 U.S. at 359, 93 S.Ct. at 600; *Slawik*, 548 F.2d at 86. It is difficult to define with precision the point at which a question becomes so ambiguous that it is not amenable to jury interpretation. We have stated that the point is reached "when it [is] entirely unreasonable to expect that the defendant understood the question posed to him." *Slawik*, 548 F.2d at 86. Other courts have said that "[a] question is fundamentally ambiguous when it 'is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.' " *Lighte*, 782 F.2d at 375 (quoting *United States v. Lattimore*, 127 F.Supp. 405, 410 (D.D.C.), *aff'd by an equally divided court*, 232 F.2d 334 (D.C.Cir.1955)).

■ The question on the credit card application asking Ryan to supply his "PREVIOUS ADDRESS (Last 5 Years)" is ambiguous on more than one level. First, the word "address" is imprecise and vague. The government asserts that "address" is synonymous with "domicile" or "primary residence." While the government's position is not implausible, both the common parlance and legal authority instruct that

"address" is a term which includes—but is not limited to—the concept of domicile or residence. A person "may have an address, that is, a place where mail or other communications will reach him, at a place other than his residence." *Munson v. Bay State Dredging & Contracting Co.*, 314 Mass. 485, 489, 50 N.E.2d 633, 636 (1943). Thus, while a person can have but one domicile or primary residence at any given time, he may have two or more addresses. This distinction is particularly significant under the facts of this case. At the time Ryan made the credit card application, his domicile was in Egg Harbor, New Jersey; however, he also maintained a home at 2401 Pennsylvania Avenue, Philadelphia, Pennsylvania. This Philadelphia address also happens to be the location of Ryan's last previous *domicile*, and it is the address that appears on the letterhead of the correspondence which Ryan attached to the credit card application. The government, taking the position that "address" and "domicile" are synonymous, argued at trial and on appeal that 2401 Pennsylvania Avenue, Philadelphia, Pennsylvania was Ryan's last previous address. However, under the broader definition of "address," Ryan could correctly have determined that his Philadelphia home was a *present*, not a previous address. Thus, his failure to list the Philadelphia address as his "PREVIOUS ADDRESS" on the credit card application might well have resulted from an ambiguity in the question itself.

Even if the word "address" were not vague, we still would find that the question asking Ryan to supply his "PREVIOUS ADDRESS (Last 5 Years)" is ambiguous. The question has at least three possible meanings. It could be viewed as asking the applicant to supply

1) any previous address that the applicant has had within the last five years,

2) the applicant's most recent previous address if and only if the applicant

lived at that address within the last five years, or

3) all previous addresses that the applicant has had within the last five years.

If one views the question as asking the applicant to supply any previous address within the last five years, then the indictment failed to allege adequately that Ryan made a false statement. The pertinent part of the indictment states, "the application [was] false in that defendant Ryan ... stated that his previous address for a ten year period had been in Frankfurt, West Germany, when in fact he had resided in various locations in the United States for at least *four* years prior to making this application. Indictment at 4 (emphasis added). Clearly, the fact that Ryan lived at various locations in the United States for a period of *four* years prior to making the application does not preclude the possibility that he resided in West Germany within *five* years of making the application. Nor does it preclude the possibility that he actually resided in West Germany for a total of ten years. Thus, assuming that the application merely asked Ryan to supply *a* previous address, then the indictment did not sufficiently aver that Ryan made a false statement in violation of § 1014.

Though the word "previous" generally is understood to mean "antecedent," "prior," or "before," the word is sometimes limited in meaning to "next prior to" or "next preceding." Black's Law Dictionary 1070 (5th Ed.1979); *see Syracuse Sav. Bank v. Brown*, 181 Misc. 999, 42 N.Y.S.2d (N.Y. Sup.Ct.1943). If the word "previous" on the credit card application is viewed as having this more limited meaning, then the indictment arguably did properly allege that Ryan made a false statement (still assuming, of course, that "address" and "domicile" are synonyms). However, there is nothing on the application which indicates that the limited definition was intended.[2]

2. For instance, the use of a definite article before the word "previous" would normally indicate that the limited definition is intended, *e.g.*, *the* previous page, *the* previous year, etc. In

this case, the bank certainly could have asked for Ryan's *"last* previous address" if that is the information that the bank wanted.

Finally, one could construe the question as asking the applicant to list all previous addresses within the last 5 years. This is an unlikely construction since the question contains the singular "address" and since the application provides enough space for the applicant to write but one address. However, this is possibly the construction that the grand jury accepted. The indictment charges that "in fact [Ryan] had resided in various locations in the United States for at least four years prior to making [the] application." Though the indictment is not clear, it appears that the grand jury found that a truthful answer would have contained the addresses of these "various locations in the United States" where Ryan resided.

As the foregoing discussion indicates, the question concerning Ryan's previous address is open to numerous interpretations and does not have "a meaning about which men of ordinary intellect could agree." *Lighte*, 782 F.2d at 375. Further, the indictment does not clearly set forth the grand jury's understanding of the question, and as we stated in *Slawik*, "a [false statements] conviction ... may not stand where the indictment fails to set forth the precise falsehood alleged and the factual basis of its falsity with sufficient clarity to permit a jury to determine its verity and to allow meaningful judicial review of the materiality of those falsehoods." *Slawik*, 548 F.2d at 83; *see Tonelli*, 577 F.2d at 195. Because of the insufficiency of the indictment and because of the inherent ambiguity of the "previous address" question, the jury should not have been allowed to consider Ryan's answer to the question as a possible basis for a conviction under count two.

B. The Statement Concerning Ryan's Social Security Number.

■ Ryan urges that there is "no tenable basis for holding that a 'dash' through the space requesting a Social Security number can be legally sufficient to constitute a false statement." Appellant's Brief at 20. We disagree. Common experience teaches that people often make "statements" with the nod or shake of a head, or with a particular motion of the hand, or with a myriad of symbolic, non-verbal actions that, through a common cultural understanding, have communicative content. Thus, the fact that a word was not spoken or written, does not necessarily mean that a message was not sent and received. This rather basic concept is embodied in Fed.R. Evid. 801(a), which defines a "statement" as any "(1) oral or written assertion, or (2) nonverbal conduct of a person, if it is intended by him as an assertion." Similarly, we hold that a "statement" for purposes of § 1014 includes assertive non-verbal conduct.

Having decided that non-verbal conduct, such as the making of a "dash," can constitute a statement, we now must determine whether there was sufficient evidence for the jury to find that the statement made by Ryan was false. There are two possible interpretations of Ryan's statement: 1) he has no Social Security number, or 2) he, for some unspecified reason, chose not to respond to the question. At trial, the government presented evidence showing that at the time Ryan made the statement, he did in fact have a Social Security number; therefore, if the first interpretation correctly describes the intended meaning of Ryan's answer, then the jury was entitled to conclude that the statement was false. However, if the second interpretation is correct, then the statement cannot be characterized as either "true" or "false," and consequently cannot form the basis of a § 1014 conviction,[3] *Williams v. United States*, 458 U.S. at 284-85, 102 S.Ct. at 3091-92, but the mere fact that Ryan's answer might generate two interpretations does not necessarily make his conviction invalid. *United States v. Williams*, 552 F.2d 226, 229 (8th Cir.1977).

■ When the defendant's answer to an unambiguous question is capable of two

---

**3.** Thus, under neither interpretation can one characterize the statement as "literally true."

Therefore, *Bronston* is inapposite.

or more constructions, it is up to the jury to decide which construction the defendant intended to convey.[4] *Id.; see Long,* 534 F.2d at 1101. In making its determination, the jury need not examine isolated segments of the question and answer exchange, but may also consider extrinsic or circumstantial evidence that bears on the defendant's intent. *Lighte,* 782 F.2d at 373; *United States v. Williams,* 552 F.2d at 229; *United States v. Marchisio,* 344 F.2d 653, 661 (2d Cir.1965). Such evidence exists in this case. Shortly before submitting the credit card application, Ryan said to Ms. Auriemma, the bank manager, that he did not have a Social Security number. Ryan sent the application to the bank along with a letter to Ms. Auriemma. Though the oral statement to Ms. Auriemma was not a subject of the indictment, evidence of the statement was admissible to prove which of two objectively reasonable interpretations Ryan assigned to his answer on the application. In light of this evidence, a reasonable jury could conclude that Ryan intended to and did represent falsely that he had no Social Security number.

■ Ryan further contends that even if the statement is false, it is not material. A statement is materially false for purposes of § 1014 if it has "the capacity to influence" the bank to which it is made. *Goberman,* 458 F.2d at 229. Actual reliance by the bank on the defendant's false statement is not necessary for a conviction under § 1014; it is enough that the statement is of a type that could disturb the balance of facts that would otherwise be available to the bank. *See United States v. Glassey,* 715 F.2d 352, 353 (7th Cir.), *cert. dismissed,* 464 U.S. 1032, 104 S.Ct. 566, 78 L.Ed.2d 733 (1983). "Materiality is also established when it is shown that the inquiry ... concerns the *'discovery of assets, including the history of [the defendant's] financial transactions.'" United States v. Phillips,* 606 F.2d at 887 (quoting *United States v. O'Donnell,* 539 F.2d 1233, 1237 (9th Cir.), *cert. denied,* 429 U.S. 960,

97 S.Ct. 386, 50 L.Ed.2d 328 (1976)) (emphasis added). Whether a particular statement is material is "a question of law, decision upon which is reserved to the court." *United States v. Greber,* 760 F.2d 68, 73 (3d Cir.1985) (speaking about the materiality requirement in a false statements prosecution under 18 U.S.C. § 1001 (1982)).

■ In *United States v. Phillips,* the Ninth Circuit held that a false Social Security number in a bankruptcy petition was a material falsehood because "the false social security number might have impeded the investigation into the appellant's financial history...." 606 F.2d at 887. Similarly, in this case the government presented ample evidence indicating that a loan applicant's Social Security number is a key piece of information in the bank's effort to obtain an accurate credit report. Ryan attempts to distinguish *Phillips* by pointing out that the defendant in *Phillips* actually supplied a false Social Security number, while he merely represented that he had *no* Social Security number. We believe that this is a distinction without a difference. In either case the bank is thwarted from pursuing a path of investigation that could conceivably uncover information adverse to the success of the loan application. Accordingly, we hold that if the statement is false, then it is materially false and could support a conviction under § 1014.

C. The Statement Concerning Ryan's Other Debts.

■ Finally, we reject Ryan's argument that the statement concerning his other debts was literally true and incapable of supporting a conviction under *Bronston.* As noted earlier, it is unclear whether *Bronston* applies to cases arising under § 1014, but assuming that it does apply, it is inapposite to the facts at hand. In *Bronston,* the defendant's unresponsive answer was "true and complete on its face." *Bronston,* 409 U.S. at 359, 93 S.Ct. at 600. The questioner would not have had to look

---

4. Under the Supreme Court's decisions in *Bronston* and *Williams,* it is of course necessary that the statement be literally false under at least one construction of the statement; it is not

enough that the defendant intended to deceive. Here, Ryan's statement concerning his Social Security number is "literally false" under the first interpretation mentioned above.

beyond the answer itself in order to realize that it was actually a response to a question that was never asked. Ryan's response, however, was neither true nor complete on its face. The question asked Ryan to "LIST *ALL* OUTSTANDING DEBTS" (emphasis added). He responded by listing his outstanding mortgage but failed to list nearly two million dollars in other outstanding obligations. Nothing on the face of the answer would indicate that it was incomplete or responsive to any question other than the one that was actually asked. The question asked for "ALL." Ryan listed some but clearly *not* "ALL." It would require Orwellian verbal gymnastics to conclude that this response is "literally true." We, of course, will not engage in such an exercise.

Ryan complains, however, that later on the application he responded affirmatively to the question, "Does applicant owe other creditors?" According to Ryan, this later response negates the falsity of his earlier answer concerning his outstanding debts. We cannot agree. A truthful answer to a question in one section of the application does not "unring the bell" that was activated by a false answer in another section. The "other creditors" question does not immediately follow nor explicitly refer to the "LIST ALL OUTSTANDING DEBTS" question. Thus, Ryan's affirmative response to the "other creditors" question would not necessarily alert the bank to the falsity of his previous answer to the "LIST ALL OUTSTANDING DEBTS" question.[5] Of course, on remand Ryan may attempt to establish that he intended to so alert the bank. While the establishment of this fact would not negate the falsity of his answer concerning his outstanding debts, it would tend to indicate a lack of criminal intent.

## IV.

Ryan also contends that a reversal is required because the trial judge did not adequately instruct the jury that its verdict must be unanimous. Because we are re-versing the conviction on other grounds, we need not decide whether the district court's instruction was in error. However, we make the following brief comments for the guidance of the district court on remand.

Prior to trial, Ryan submitted a point for charge requesting the trial judge to instruct the jury that in order to convict on count two, the jurors not only must agree that Ryan made a false statement in violation of § 1014 but also must unanimously agree as to which of the three statements formed the basis of the conviction, *i.e.*, a conviction would be *improper* if six jurors found that only the statement with respect to the Social Security number was false, while the six other jurors found that only the statement concerning outstanding debts was false. Though the point for charge accurately stated the applicable law, the trial judge refused to give the requested instruction. Instead he gave the following charge: "You could not return a verdict of guilty in this case unless all of you agreed that the defendant's statement on the application was materially false in at least one of the ways that the government claims it was false." This charge failed to make clear that the jurors needed to agree as to which of Ryan's statements was false.

Under Fed.R.Crim.P. 7(c), a single count of an indictment may allege that a defendant committed an offense "by one or more specified means." When a single count avers that the defendant committed an offense by engaging in a course of conduct including various discrete yet related acts, there may be a danger that the jurors will return a verdict of guilt without being in substantial agreement as to the principal factual elements underlying the offense. However, even when an indictment provides two or more factual bases upon which a conviction could conceivably rest, "[n]ormally, a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unani-

---

5. Indeed, the "other creditors" question could be interpreted as asking, "Do you owe creditors *other than the bank to which you are now apply-* *ing for credit?*" Under this plausible interpretation, the "other creditors" and "outstanding debts" questions are not at all related.

mous on whatever specifications form the basis of the guilty verdict." *United States v. Payseno,* 782 F.2d 832, 835 (9th Cir. 1986); *see United States v. Frazin,* 780 F.2d 1461, 1468 (9th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986); *United States v. Ferris,* 719 F.2d 1405, 1407 (9th Cir.1983); *United States v. Murray,* 618 F.2d 892 (2d Cir.1980). Thus, as a general rule, the trial judge need not give a unanimity instruction that is narrowly tailored to the specific facts of the case. This general rule does not apply in certain cases where the facts are exceptionally complex, *see Payseno,* 782 F.2d at 836–37, or where the allegations in a single count are either contradictory or only marginally related to one another, *id.,* or where there is a variance between the indictment and the proof at trial, *United States V. Echeverry,* 698 F.2d 375, 377, *modified,* 719 F.2d 974 (9th Cir.1983), *United States v. Mastelotto,* 717 F.2d 1238, 1250 (9th Cir.1983), or where there is a tangible indication of jury confusion. *Echeverry,* 698 F.2d at 376–77. In these instances, the trial court must give an augmented unanimity instruction.

We need not, and do not decide whether this case falls within the general rule or within one of the exceptions; it is unquestionably a close case. We believe, however, that in any case where a count will be submitted to the jury on alternative theories, prudence counsels the trial court to give an augmented unanimity instruction if the defendant requests such a charge. "Unanimity is an indispensable element of a federal jury trial." *United States v. Scalzitti,* 578 F.2d 507, 512 (3d Cir.1978); *see* U.S. Const. art. III, § 2, cl. 3. The marginal time and inconvenience of giving an augmented instruction is a small price to assure that this indispensable element will be obtained and that a possible conviction will be upheld.[6]

## CONCLUSION

Though there was sufficient evidence to convict Ryan on the basis of his statement concerning his Social Security number or on the basis of his statement about his outstanding debts, we must nonetheless reverse the judgment of the district court. The statement concerning Ryan's previous address does not supply a legally permissible theory on which to ground a conviction under § 1014. Because the jury may have rested its verdict on this impermissible theory, we will reverse the judgment of conviction and remand for a new trial.

---

**6.** Coincidentally, the date that this opinion was filed marks the two-hundredth anniversary of the conclusion of the Framers' debates on the trial by jury clause of Article III. 2 The Records of the Federal Convention of 1787 at 628 (M. Farrand ed. 1966) (J. Madison's notes on the proceedings of September 15, 1787).