**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Pamela M. MANAPAT,**
**Defendant–Appellee.**

No. 88–4029.

United States Court of Appeals,
Eleventh Circuit.

April 18, 1991.

---

\* Honorable Duross Fitzpatrick, U.S. District Judge for the Middle District of Georgia, sitting

by designation.

Roberta M. Klosiewicz, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellant.

Matthew H. Perry, Asst. Federal Public Defender, Tampa, Fla., for defendant-appellee.

Before KRAVITCH and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Appellee Pamela M. Manapat was indicted for violating 18 U.S.C. § 1001, which prohibits "knowingly and willfully" making false statements to any department or agency of the United States.

## I. Background

The case arose after Manapat submitted an application for an Airman Medical Certificate to the Federal Aviation Administration. On the application form, Manapat checked "No" to two questions asking for "Record of traffic convictions" and "Record of other convictions." In fact, she had been convicted three times prior to filling out the form.

Manapat moved to dismiss the indictment, arguing that the application form was ambiguous and misleading. Item 21 of the form was entitled "MEDICAL HISTORY." Item 21 then contained four columns, each with the heading "Condition." The form instructed the applicant to check "Yes" or "No" to whether or not the applicant had had any of the "conditions" listed. The twenty-four item list started with "Frequent or severe headaches," "Dizziness or fainting spells," "Unconsciousness

for any reason," and proceeded to list many other medical conditions. The twenty-second and twenty-third items listed, however, were "Record of traffic convictions," and "Record of other convictions." The final item was "Other illnesses." *See* Appendix. The district court originally denied the motion to dismiss, but then reconsidered the motion sua sponte. After making the following statement from the bench, the trial judge dismissed the indictment:

I have determined that it is a matter of fundamental fairness. And the way their question has been put on this form, which is basically to determine medical conditions, is fundamentally unfair; that the way it is put is vague. It is misleading and confusing. It is ambiguous, and the way it is configured in the form amounts to a trick question; and I think it is fundamentally unfair to base a felony prosecution on any answers that may be given by anybody on this form. And it is so fundamentally unfair that it amounts to a denial of due process.

## II. Discussion

■ The district court dismissed the indictment upon its conclusion that the application form was ambiguous as a matter of law. Our review of the dismissal is therefore plenary. *See United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir.1987).

The issue of ambiguous questions has rarely arisen in cases brought under 18 U.S.C. § 1001. Several other federal statutes, however, prohibit making false statements in other contexts. *See, e.g.,* 18 U.S.C. § 1014 (false statements intended to influence a financial institution); 18 U.S.C. § 1623 (false statements to a grand jury or court (perjury)). The reasoning in cases concerning those statutes is equally applicable to the issue in this case, and we therefore look to those cases to guide our inquiry.

Judge Ely of the Ninth Circuit noted a number of years ago the unfairness of convicting a defendant for giving a possibly false answer to a vague question:

I do not think it proper to indict and prosecute an individual for perjury when the questions forming the basis of the charge are so vaguely and inarticulately phrased *by the interrogator* as to require the jury to probe the inner workings of the accused's mind to seek to ascertain which of several plausible meanings he attributed to the ambiguous inquiries when he gave the allegedly perjurious responses.

*United States v. Cook,* 497 F.2d 753 (9th Cir.1972) (Ely, J., dissenting) (emphasis original), *majority opinion withdrawn by and dissenting opinion cited approvingly in,* 489 F.2d 286 (9th Cir.1973). The Supreme Court agreed with this reasoning shortly thereafter: "Precise questioning is imperative as a predicate for the offense of perjury." *Bronston v. United States,* 409 U.S. 352, 362, 93 S.Ct. 595, 602, 34 L.Ed.2d 568 (1973).

■ This court has held that when a question is "arguably ambiguous," "the defendant's understanding of the question is a matter for the jury to decide." *United States v. Bell,* 623 F.2d 1132, 1136 (5th Cir.1980);[1] *see also United States v. Thompson,* 637 F.2d 267, 270 (5th Cir. 1981). Both parties agree, however, that "[w]hen a line of questioning is so vague as to be 'fundamentally ambiguous,' the answers associated with the questions posed may be insufficient as a matter of law to support [a] perjury conviction." *United States v. Lighte,* 782 F.2d 367 (2d Cir.1986). *See also United States v. Bonacorsa,* 528 F.2d 1218, 1221 (2d Cir.1976) ("Absent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of appellant's answer was for the jury."); *United States v. Yasak,* 884 F.2d 996, 1003 (7th Cir.1989) (fundamental ambiguity requires court to take question away from jury); *United States v. Ryan,* 828 F.2d 1010, 1015 (3d Cir.1987) (same); *United States v. Martellano,* 675 F.2d 940, 943

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

(7th Cir.1982) (same). Because the district court dismissed the indictment, rather than allowing the issue to go to trial, we must determine whether the application form was so fundamentally ambiguous as to preclude a conviction as a matter of law.

The practice of dismissing perjury indictments based on fundamentally ambiguous questions originated in *United States v. Lattimore,* 127 F.Supp. 405 (D.D.C.), *aff'd by an equally divided court,* 232 F.2d 334 (D.C.Cir.1955). In *Lattimore,* the court recognized that "[w]hile the proper test of perjury is subjective, insofar as it is based upon the understanding of the witness himself regarding the words that he used, a criminal prosecution must have certain objective standards." *Id.* at 409. Thus, a question or phrase is ambiguous as a matter of law when it "is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *Id.* at 410. *See also Ryan,* 828 F.2d at 1015; *Lighte,* 782 F.2d at 375.

In *Ryan,* the defendant was charged with making a false statement to a federally insured bank. In that case, a loan application required the defendant to indicate his "PREVIOUS ADDRESS (last 5 years)." The defendant listed an address in West Germany and stated that the address had been his address for ten years. The government contended that the defendant had made a false statement because the defendant had actually been living at addresses in the United States for the last four years. The court reversed his conviction, finding that the question was ambiguous in several ways. The court stated that "address" was unclear because the term does not necessarily refer to someone's residence, but could refer to a mailing address. Furthermore, "previous" could mean any previous address, the most recent previous address, or all previous addresses. *Ryan,* 828 F.2d at 1015–16. Based on this ambiguity, the court held that the jury should not have been allowed to consider the defendant's answers as a basis for conviction. *Id.* at 1017.

In *Lighte,* the court overturned a perjury conviction based on the fundamental ambiguity of the questions asked to the defendant. The court held that several questions posed by an attorney referring to the defendant as "you" failed to distinguish the defendant in his personal capacity from the defendant in his capacity as a trustee. *Lighte,* 782 F.2d 375–76.

Although the above cases illustrate the types of cases where courts have found that "men of ordinary intellect" might disagree over the meaning of particular questions, the cases do not answer precisely the question in the case at bar. In the present case, the defendant-appellee does not argue that any specific term is susceptible of many meanings, or that depending on the meaning one ascribes to a term, that her answer is literally true. It is undisputed that defendant's answers to the questions were literally false. Appellee's argument, rather, is that the application form is so confusing that one could inadvertently mark the wrong answer without realizing the import of such an action.

We find the reasoning in *Lattimore* useful in addressing Manapat's argument. In *Lattimore,* the defendant was indicted for perjuring himself before a Senate subcommittee when he denied he was a "follower of the Communist line." *Lattimore,* 127 F.Supp. at 406. The court dismissed the indictment, holding that the phrase was too vague to support a conviction. The court stated:

> This count, even with its apparent definition, is an open invitation to the jury to substitute, by conjecture, their understanding of the phrase for that of the defendant.... To ask twelve jurors to agree and then decide that the definition of the Communist line found in the indictment is the definition that defendant had in mind and denied believing in, is to ask the jury to aspire to levels of insight to which the ordinary person is incapable, and upon which speculation no criminal indictment should hinge.

*Id.* at 410. We conclude that the questions at issue in this case, like the phrase in

*Lattimore,* are too ambiguous to allow a jury to speculate as to the defendant's intentions at the time she filled out the application form.

Here, Manapat was attempting to obtain a private, non-commercial Airman *Medical* Certificate. The application form, which was filled out at the doctor's office, included a "Medical History." Within the medical history, the form asked for information about twenty-four "Conditions." The first twenty-one of the "conditions" were medical in nature. Questions twenty-two and twenty-three asked about convictions. The twenty-fourth was again medical in nature. We cannot accept the government's argument that a reasonable applicant would not be confused by this configuration of questions. It is conceivable that an applicant might believe that the form was asking for convictions somehow related to medical conditions.[2] Or, an applicant could fail to understand the importance of such questions on a form concerning medical conditions and simply not give proper thought before answering. Or, more likely, an applicant in generally good health could routinely check off the many items on the standardized form without reading them carefully, resulting in an inaccurate response.[3]

■ Although the single statements "Record of traffic convictions," or "Record of other convictions" may not be ambiguous standing alone, they become quite confusing when buried in a list headed "Medical History" and purportedly concerned with medical conditions. Several courts have stated that "[a] defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole." *United States v. Bonacorsa,* 528 F.2d 1218, 1221 (2d Cir. 1976). *See also United States v. Yasak,* 884 F.2d 996, 1002 (7th Cir.1989) (questioning becomes clearer when looked at in totality). This principle applies equally to prosecutions as well as to defenses. In order to successfully prosecute an indictment for making a false statement, the government must not remove questions from the context in which their answers were given in an attempt to prove their clarity.

■ Members of our society are often asked to fill out standardized forms containing large numbers of general background questions. Such forms, usually hastily completed in waiting rooms, rarely require critical information that, if inaccurate, could result in criminal prosecution. If these forms do require such critical information, unwary citizens should be able to expect that important questions will not be hidden in laundry lists of unrelated topics. Unlike other crimes, the crime of making a false statement is unique in that there is no separately demonstrable *actus reus.* The *actus reus* and the *mens rea* unite into a single inquiry: Did the defendant know the statement was false when made? *See Cook,* 497 F.2d at 763. When the question that led to the allegedly false response is fundamentally ambiguous, we cannot allow juries to criminally convict a defendant based on their guess as to what the defendant was thinking at the time the response was made.[4]

2. We note that a large number of medical conditions can cause black-outs or other losses of bodily control. It is conceivable that an applicant could believe that the questionnaire was referring to convictions that resulted from this type of medical condition. This is especially likely when the question immediately following the two questions about convictions was "Other illnesses."

3. The ambiguity of the form seems even more evident in light of the government's own doubts about the clarity of the form. The district court took judicial notice of a United States Depart-

ment of Transportation internal memorandum stating that the form should be changed.

4. Although the dissent concludes that the government should have an opportunity to present its case to a jury, we disagree because of the record in this case. The record shows that the defendant filed a written motion to dismiss on November 2, 1988, arguing, among other things, that the form was inherently ambiguous. The defendant also moved that the motion be orally argued. The government filed a written response to the motion for oral argument on November 15, 1988 stating that oral argument

■ Having concluded that the application form was ambiguous as a matter of law, it is important to make a few further observations. First, our holding in no way questions the authority of the government to seek information necessary to determine the fitness of those who desire to fly in our nation's skies. Furthermore, our holding does not preclude the government from refusing to grant a certificate, or from revoking a certificate already granted, if the applicant falsely responds to the government's requests for information. Finally, we do not mean to suggest that careless responses on standardized forms can absolve a citizen of the obligation to fill out such forms truthfully. We merely hold that the government may not provide someone with a confusing and ambiguous form and then prosecute when the answers are inaccurate. The government could avoid this problem by providing a separate form for convictions, or by redesigning the Airman Medical Certificate application form so that it clearly shows that critical non-medical information is being requested of the applicant.

## III. Conclusion

In accordance with the above discussion, the decision of the district court is AF-FIRMED.[5]

was not necessary. The government also responded to the motion to dismiss. In its response, the government made no allegations that there was any additional evidence surrounding the circumstances at the time the form was completed. In light of the fact that the government made no attempt to show that there was any evidence other than the form itself and the false answers to prove the knowing and willful nature of the defendant's actions, we see no reason to send this case to a jury.

5. All pending motions are denied.

# INFORMATION FOR APPLICANT

## DEPARTMENT OF TRANSPORTATION
### FEDERAL AVIATION ADMINISTRATION

*Application For Airman Medical Certificate Or Airman Medical And Student Pilot Certificate — Privacy Act*

The information on the attached FAA Form 8500-8, Application For Airman Medical Certificate Or Airman Medical And Student Pilot Certificate is solicited under the authority of the Federal Aviation Act of 1958, as amended, and the Federal Aviation Regulations, Part 67, Medical Standards and Certification.

Except for your Social Seeurity Number (SSN), submission of this information is mandatory and incomplete submission will result in delay of further consideration or denial of your application for an airman medical certificate or airman medical and student pilot certificate. Other than your SSN, the purpose of the information is to determine whether you meet Federal Aviation Administration medical requirements to hold an airman medical certificate or airman medical and student pilot certificate. The information will also be used to provide data for the FAA's Automated Medical Certification Data Base and Automated Comprehensive Airman Information System, to depict airman population patterns and to update certification procedures and medical standards. For air traffic control specialists employed by the Federal Government, the information requested will be used as a basis for determining medical eligibility for initial and continuing employment.

Submission of an SSN is not required by law and is voluntary. Your refusal to furnish your number will not result in the denial of any right, benefit or privilege provided by law. Your SSN is solicited to assist in performing the agency's functions under the Federal Aviation Act of 1958, as amended, and if supplied, it will be used by the FAA to associate all information in agency files relating to you. If you refuse to supply an SSN, a substitute number or other identifier will be assigned as required.

## APPLICANT TEAR OFF THIS SHEET
## BEFORE COMPLETING APPLICATION FORM

**FAA Form 8500—8** (10—75)    SUPERSEDES FAA FORM 8500-22

COPY OF FAA FORM 8500 9 (MEDICAL CERTIF-ICATE), OR FAA FORM 8420 2 (MEDICAL/STUDENT PILOT CERTIFICATE) ISSUED **BB- 7572101**

## MEDICAL CERTIFICATE_____CLASS AND STUDENT PILOT CERTIFICATE

THIS CERTIFIES THAT *(Full name and address)*

| DATE OF BIRTH | HEIGHT | WEIGHT | HAIR | EYES | SEX |
|---|---|---|---|---|---|

has met the medical standards prescribed in Part 67, Federal Aviation Regulations for this class of Medical Certificate.

LIMITATIONS

| DATE OF EXAMINATION | | EXAMINER'S SERIAL NO |
|---|---|---|

EXAMINER SIGNATURE

TYPED NAME

AIRMAN'S SIGNATURE

WHEN ISSUED AS A MEDICAL-STUDENT PILOT CERTIFICATE, the holder has met standards prescribed in Part 61, FAR's for such certificate, and is prohibited from carrying passengers.

---

Please print these items

| APPLICATION FOR | ☐ AIRMAN MEDICAL CERTIFICATE | ☐ AIRMAN MEDICAL AND STUDENT PILOT CERTIFICATE |
|---|---|---|

| 1. FULL NAME *(Last, first, middle)* | PATH CONTROL |
|---|---|

| 2A ADDRESS *(No. Street, City, State, ZIP No.)* | 2B SOCIAL SECURITY No |
|---|---|

County:

2C PLACE OF BIRTH *(Student pilot applicants only)*

| 3 DATE OF BIRTH *(Mo., day, year)* | 4 HEIGHT *(Inches)* | 5 WEIGHT *(Pounds)* | 6 COLOR OF HAIR | 7 COLOR OF EYES | 8 SEX |
|---|---|---|---|---|---|

| 9A CLASS OF MEDICAL CERTIFICATE APPLIED FOR | 9B TYPE OF AIRMAN CERTIFICATE·S· HELD | |
|---|---|---|
| | AIRLINE TRANSPORT | FLIGHT INSTRUCTOR |
| FIRST | COMMERCIAL | PRIVATE |
| SECOND | ATC SPECIALIST | STUDENT |
| THIRD | FLIGHT ENGINEER | NONE |
| | FLIGHT NAVIGATOR | OTHER |

10 OCCUPATION *(If ATC Specialist, specify position and facility)*

| 11 EXTENDED ACTIVE DUTY MEMBER OF | | 12 EMPLOYER |
|---|---|---|
| a AIR FORCE | d COAST GUARD | |
| b ARMY | e NAT'L GUARD | 13 LENGTH OF TIME IN PRESENT OCCUPATION |
| c NAVY/MARINES | f. NONE | |
| MILITARY SERVICE NO. | | 14 PRIMARY TYPE OF FLYING |
| | | BUSINESS / PLEASURE |

15. CURRENTLY USE ANY MEDICATION *(Including eye drops)*

YES / NO — TYPE AND PURPOSE

| TOTAL PILOT TIME | | 18. HAS AN FAA AIRMAN MEDICAL CERTIFICATE EVER BEEN DENIED, SUSPENDED, OR REVOKED | 19 HAVE YOU, AS A PILOT, HAD AN AIRCRAFT ACCIDENT WITHIN THE PAST 2 YEARS | 20 DATE OF LAST FAA PHYSICAL EXAM *(If none, state so)* |
|---|---|---|---|---|
| | 16 TO DATE / 17 LAST 6 MOS. | | | |
| CIVIL | | YES / DATE | YES / DATE | |
| MILITARY | | NO | NO | |

21 MEDICAL HISTORY – HAVE YOU EVER HAD OR HAVE YOU NOW ANY OF THE FOLLOWING: *(For each "yes" checked, describe condition in REMARKS)*

| Yes | No | Condition | Yes | No | Condition | Yes | No | Condition | Yes | No | Condition |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | a Frequent or severe headaches | | | g Heart trouble | | | m Nervous trouble of any sort | | | s Medical rejection from or for military service |
| | | b Dizziness or fainting spells | | | h. High or low blood pressure | | | n Any drug or narcotic habit | | | t Rejection for life insurance |
| | | c Unconsciousness for any reason | | | i Stomach trouble | | | o Excessive drinking habit | | | u Admission to hospital |
| | | d Eye trouble except glasses | | | j Kidney stone or blood in urine | | | p Attempted suicide | | | v Record of traffic convictions |
| | | e Hay Fever | | | k Sugar or albumin in urine | | | q Motion sickness requiring drugs | | | w Record of other convictions |
| | | f Asthma | | | l Epilepsy or fits | | | r Military medical discharge | | | x Other illnesses |

| REMARKS *(If no changes since last report, so state)* | FOR FAA USE REVIEW ACTION CODES |
|---|---|

| 22. HAVE YOU EVER BEEN ISSUED A STATEMENT OF DEMONSTRATED ABILITY WAIVER· | NO / YES *(Give defects and waiver no.)* | PHYSICAL DEFECTS NOTED ON STATEMENT OF DEMONSTRATED ABILITY .WAIVER· | WAIVER SERIAL NO. |
|---|---|---|---|

23. MEDICAL TREATMENT WITHIN PAST 5 YEARS

| DATE | NAME AND ADDRESS OF PHYSICIAN CONSULTED | REASON |
|---|---|---|
| | | |
| | | |
| | | |

— NOTICE —
Whoever in any matter within the jurisdiction of any department or agency of the United States knowingly and will fully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or who makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both. (U.S. Code, Title 18, Sec. 1001.)

24. APPLICANT'S DECLARATION

I hereby certify that all statements and answers provided by me in this examination form are complete and true to the best of my knowledge, and I agree that they are to be considered part of the basis for issuance of any FAA certificate to me. I have also read and understand the Privacy Act statement that accompanies this form.

| SIGNATURE OF APPLICANT *(In ink)* | DATE |
|---|---|

FAA FORM 8500-8 10-75   SUPERSEDES PREVIOUS EDITION   Form Approved OMB No 04 R0089

APPENDIX—Continued

## REPORT OF MEDICAL EXAMINATION

| NOR-MAL | CHECK EACH ITEM IN APPROPRIATE COLUMN (Enter NE if not evaluated) | | AB NOR MAL | NOTES   Describe every abnormality in detail, enter applicable item number before each comment  Use additional sheets if necessary and attach to this form |
|---|---|---|---|---|
| | 25  Head, face, neck and scalp | | | |
| | 26  Nose | | | |
| | 27. Sinuses | | | |
| | 28. Mouth and throat | | | |
| | 29. Ears, general  (Internal and external canals) (Auditory acuity under item 49) | | | |
| | 30. Drums  (Perforation) | | | |
| | 31. Eyes, general  (Visual acuity under items 50 & 51) | | | |
| | 32. Ophthalmoscopic | | | |
| | 33  Pupils  (Equality and reaction) | | | |
| | 34  Ocular motility  (Associated parallel movement, nystagmus) | | | |
| | 35. Lungs and chest  (Including breasts) | | | |
| | 36. Heart  (Thrust, size, rhythm, sounds) | | | |
| | 37. Vascular system | | | |
| | 38  Abdomen and viscera  (Including hernia) | | | |
| | 39. Anus and rectum  (Hemorrhoids, fistula, prostate) | | | |
| | 40  Endocrine system | | | |
| | 41  G–U system | | | |
| | 42  Upper and lower extremities  (Strength, range of motion) | | | |
| | 43  Spine  other musculoskeletal | | | |
| | 44  Identifying body marks, scars, tattoos | | | |
| | 45  Skin and lymphatics | | | |
| | 46  Neurologic   (Tendon reflexes, equilibrium, senses, coordination, etc ) | | | |
| | 47  Psychiatric   (Specify any personality deviation) | | | **FOR FAA USE - PATHOLOGY CODE NOS.** |
| | 48. General systemic | | | |

| 49. HEARING | | RIGHT EAR | | | LEFT EAR | | | 50. DISTANT VISION (Standard test types only) | | | 51. NEAR VISION  (Use linear values) | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WHISPERED VOICE STANDING SIDEWAYS | | | FT | | | FT | RIGHT EYE | 20/ | CORRECTED TO 20/ | 20/ | CORRECTED TO 20/ |
| DISTANT EAR CLOSED | 500 | 1000 | 2000 | 4000 | 500 | 1000 | 2000 | 4000 | LEFT EYE | 20/ | CORRECTED TO 20/ | 20/ | CORRECTED TO 20/ |
| AUDIOMETER (Decibel Loss) | | | | | | | | | BOTH EYES | 20/ | CORRECTED TO 20/ | 20/ | CORRECTED TO 20/ |

| 52. INTRAOCULAR TENSION  (Tonometry required for Air Traffic Control Specialist) | | | 53  COLOR VISION   (Test used, number of plates missed) |
|---|---|---|---|
| TACTILE | RIGHT EYE | LEFT EYE | |
| TONOMETRIC | | | |

| 54  FIELD OF VISION | | 55  HETEROPHORIA DIOPTERS  (Not required for Class Three) | | | | |
|---|---|---|---|---|---|---|
| RIGHT EYE | LEFT EYE | DISTANCE | ESOPHORIA | EXOPHORIA | RIGHT H | LEFT H |
| | | | | | | |

| 56  BLOOD PRESSURE | | | 57  PULSE   (Wrist) | | |
|---|---|---|---|---|---|
| RECUMBENT, MM MERCURY | SYSTOLIC | DIASTOLIC | RESTING | AFTER EXERCISE | 2 MINUTES AFTER EXERCISE |
| | | | | | |

| 58  URINALYSIS | | 59  ECG (Date) | 60. OTHER TESTS |
|---|---|---|---|
| ALBUMIN | SUGAR | | |

| 61  COMMENTS ON HISTORY AND FINDINGS, RECOMMENDATIONS   (Attach all consultation reports, ECGs, X-rays, etc. to this report before mailing) | FOR FAA USE | |
|---|---|---|
| | CODED | |
| | PUNCHED | |
| | VERIFIED | |

| 62  APPLICANT'S NAME | 63  DISQUALIFYING DEFECTS  (List by item no.) | EXAMINER CODES | |
|---|---|---|---|
| HAS BEEN ISSUED ☐ MED CERTIF ☐ MED AND STUDENT PILOT CERTIF. NO CERTIF ISSUED - FURTHER EVALUATION REQUIRED  HAS BEEN DENIED  LETTER OF DENIAL ISSUED (Copy attached) | | CLERICAL REJECT | |

| 64  MEDICAL EXAMINER S DECLARATION        *I hereby certify that I personally examined the applicant named on this medical examination report, and that this report with any attachment embodies my findings completely and correctly.* | | |
|---|---|---|
| DATE OF EXAMINATION | AVIATION MEDICAL EXAMINER S NAME AND ADDRESS (Type or print) | AVIATION MEDICAL EXAMINER S SIGNATURE |

COX, Circuit Judge, dissenting:

I dissent. Some people completing the form in question could be confused by the configuration of the questions, but it is not "entirely unreasonable to expect that the defendant understood the question posed." *See United States v. Slawik*, 548 F.2d 75, 86 (3d Cir.1977). Phrasing the test as other courts have, the questions have a meaning about which people of ordinary intellect can agree. *See United States v. Lighte*, 782 F.2d 367, 374 (2d Cir.1986). The questions are not, therefore, fundamentally ambiguous.

The defendant Manapat is alleged to have knowingly and willfully answered that she had no record of convictions when in truth she had been convicted of perjury, conspiracy to distribute marijuana and possession of cocaine. This court has held, as the majority notes, that when a question is "arguably ambiguous," "the defendant's understanding of the question is a matter for the jury to decide." *United States v. Bell*, 623 F.2d 1132, 1136 (5th Cir.1980). These questions are "arguably ambiguous" only because of where they are placed on the form. Notwithstanding their placement, however, this form appears to be far less confusing than, for example, a federal income tax form, a financial statement in support of an application for a loan from a federal agency, and a variety of other federal forms that have been the basis of 18 U.S.C. § 1001 prosecutions sanctioned by the courts.

The defendant in this case makes a purely facial attack on this form. Her motion to dismiss, filed under Fed.R.Crim.P. 12(b), does not allege that *she* was confused either by the questions or by the configuration of the questions; instead, she alleges that these questions on this form are so inherently ambiguous that false answers to the questions cannot support a criminal conviction. In such a posture, the majority's observation in footnote 4—that the government had proffered no evidence on the knowing and willful nature of the defendant's answers—is irrelevant.[1] Because the defendant did not allege that she *was* confused, the government did not need to proffer evidence that she *was not* confused (in other words, that her answers were knowing and willful).

To conclude, because I believe that this form is not fundamentally ambiguous, I would hold that a facial challenge to it cannot succeed. I would therefore allow the government to attempt to prove that Manapat knowingly and willfully made false statements on the form.

---

1. Rule 12(b) motions are limited to defenses or objections "capable of determination *without* the trial of the general issue" (emphasis added). I should observe, in fairness to the district court, that the district court did not ask the government to proffer what its evidence at trial would be.