UNITED STATES of America,
Plaintiff–Appellee,

v.

James M. CULLITON, Defendant–
Appellant.

No. 00–10599.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 2002.

Filed Aug. 22, 2002.

Richard Staff, Sacramento, CA, for the defendant-appellant.

James P. Arguelles, Assistant U.S. Attorney, Sacramento, CA, for the plaintiff-appellee.

Before GOODWIN, HAWKINS, and FISHER, Circuit Judges.

**OPINION**

MICHAEL DALY HAWKINS, Circuit Judge.

Culliton appeals his conviction under 18 U.S.C. § 1001 for making false statements

on a medical form submitted to the Federal Aviation Administration ("FAA"). He argues the form is fundamentally ambiguous and therefore the district court should have dismissed the indictment. Joining the only other circuit to address the issue,[1] we conclude that the challenged questions on the FAA form are sufficiently confusing, vague and overbroad as to invite selective prosecution. Consequently, we reverse Culliton's conviction.[2]

## BACKGROUND

James Culliton is an aviation lawyer and pilot. In August 1995, he reclined in a chair that broke and tipped over, which caused him to hit his head on a credenza nearby. Following the accident, Culliton was treated for vision problems, dizziness, headaches, memory loss and depression. As a result of his injuries, Culliton brought a private civil action against three defendants, eventually reaching a settlement with two of them. The third, Viking Office Products, asserted a defense of insurance fraud and refused to settle. Apparently dissatisfied with available civil relief, Viking decided to seek criminal sanctions, transferring Culliton's confidential medical records to its private investigators who in turn convinced California State investigator, Alberto Perez, to seek criminal prosecution. Perez first sought out the Sacramento County District Attorney's office,

which declined to file a criminal complaint. Undeterred, Perez took the matter to the United States Attorney's office, which presented the information to a grand jury. The grand jury returned an indictment for a violation of 18 U.S.C. § 1001, which prohibits making materially false statements on matters within the jurisdiction of the federal government.[3]

The basis for that indictment occurred in June 1997 when Culliton had filled out a federal FAA Form 8500–8 to obtain an airman medical certificate.[4] Culliton checked the NO box to the three issues mentioned in the following question:

> 18. Have you ever had or have you now, any of the following? Answer "yes" for every condition you have ever had in your life. In the EXPLANATION box below, you may note "PREVIOUSLY REPORTED, NO CHANGE" only if the explanation of the condition was reported on a prior application for an airman medical certificate and there has been no change in your condition.: ... (b) dizziness or fainting spells, ... (d) eye or vision trouble except glasses, [and] ... (m) mental disorders of any sort: depression, anxiety, etc.

Culliton appealed after being convicted and sentenced.

---

**1.** See United States v. Manapat, 928 F.2d 1097 (11th Cir.1991).

**2.** Nothing in this opinion should be read to restrict the ability of the FAA to continue to use this form to elicit medical information from prospective and current pilots and to respond to false or inaccurate statements on the form as a basis for administrative discipline, including license forfeiture.

**3.** The statute, 18 U.S.C. § 1001, states in relevant part:

Whoever ... knowingly and willfully—

(1) falsifies, conceals or covers up ... a material fact; [or]
(2) makes any materially false, fictitious or fraudulent ... statement or representation; shall be fined under this title or imprisoned not more than 5 years, or both.

**4.** Form 8500–8 is submitted every year by pilots seeking recertification and includes about 40 yes/no questions. The origins of this case were recounted in Culliton's brief and in the excepts of record. The details were not contested by the government in either its response to Culliton's motion to dismiss or in its brief on appeal.

## ANALYSIS

 This case presents the question whether the district court erred in submitting this matter to the jury because the questions which prompted the defendant's false statements are so fundamentally ambiguous that the court should have dismissed the indictment under Section 1001 as a matter of law. Generally speaking, the existence of some ambiguity in a falsely answered question will not shield the respondent from a perjury or false statement prosecution. *United States v. Slawik,* 548 F.2d 75, 86 (3d Cir. 1977). Normally, it is for the jury to decide which construction the defendant placed on a question. *Id.* If however, a question is "excessively vague, or 'fundamentally ambiguous,'" the answer may not, as a matter of law, form the basis of a prosecution for perjury or false statement. *United States v. Ryan,* 828 F.2d 1010, 1015 (3d Cir.1987) (citing *United States v. Lighte,* 782 F.2d 367, 375 (2d Cir.1986)), *abrogated on other grounds by United States v. Wells,* 519 U.S. 482, 486 n. 3, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). *Ryan* determined that this point is reached "when it is entirely unreasonable to expect that the defendant understood the question" or when persons of ordinary intellect cannot agree on the question's meaning. *Ryan,* 828 F.2d at 1015.

 This Court has not previously addressed the question of excessive vagueness in the Section 1001 context. But we have addressed this issue in the analogous context of 18 U.S.C. § 1623 (false statements to a grand jury or court). *See United States v. Boone,* 951 F.2d 1526 (9th Cir.1991).

A question is fundamentally ambiguous when it is not a phrase with a meaning about which men of ordinary intelligence could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.

*Id.* at 1534 (internal citations and quotation marks omitted). In the context of witnesses later being charged for perjury, precise questioning has been determined as a necessity for three reasons:

to (1) preclude convictions grounded on surmise or conjecture; (2) prevent witnesses from unfairly bearing the risks of inadequate examination; and (3) encourage witnesses to testify (or at least not discourage them from doing so). Unfortunately, line drawing is inevitable, for to precisely define the point at which a question becomes fundamentally ambiguous, and thus not amenable to jury interpretation, is impossible.

*United States v. Farmer,* 137 F.3d 1265, 1269 (9th Cir.1998) (citations omitted).

Our task then is to determine whether the Form asked excessively vague questions. If we determine that the questions were only "arguably ambiguous" or not ambiguous at all, then the district court was correct to ask the jury to determine whether it "could conclude beyond a reasonable doubt that the defendant understood the question as did the government and that, so understood, the defendant's answer was false." *Boone,* 951 F.2d at 1533 (internal quotation marks omitted). *See also United States v. Bonacorsa,* 528 F.2d 1218, 1221 (2d Cir.1976) ("Absent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of appellant's answer was for the jury.").

In *Bronston v. United States,* 409 U.S. 352, 362, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the Supreme Court, reversing a perjury conviction, ruled that "[p]recise questioning is imperative as a predicate for the offense of perjury." Convictions for false statements under Section 1001 are closely analogous. Therefore we must

look to the questions on the Form and see whether those questions are sufficiently precise. *See Lighte,* 782 F.2d at 375 ("When a line of questioning is so vague as to be 'fundamentally ambiguous,' the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction. Inasmuch as the issue then becomes one of legal sufficiency, a reviewing court may override a jury determination.") (internal citations omitted).

█ The government argues that Culliton's answers to the Form were properly submitted to the jury because the district court instructed the jury that Culliton thought the questions were ambiguous and that Culliton's "understanding of the questions is a matter for the jury to decide." This begs the question: whether they were sufficiently vague or ambiguous as to preclude prosecution for a false statement.

At argument, the government acknowledged that the FAA Form questions were capable of rendering innocent responses objectively false. For example, the Form asks if one has ever experienced dizziness. The government conceded that a prospective pilot whose dizziness resulted from once participating in the game of "Dizzy Izzy" could still properly check "No" on the FAA Form.[5] This response would be both "innocently" true but objectively false, thereby subjecting the respondent to criminal prosecution.

The same vagueness afflicts the other questions that served as the basis for the indictment in this case. Culliton was asked on the Form: Have you ever had mental disorders of any sort? This question tempts a range of answers. It may invite a "Yes" answer from someone without any history of diagnosis by a licensed clinician and it may elicit a "No" answer from someone who has had a medical diagnosis but disagrees with that diagnosis, perhaps because another clinician rejected the earlier diagnosis. Because the question is capable of several meanings,[6] we refuse to permit objectively false answers to the question to serve as a basis for false statement prosecutions. The uncertain nature of the question is precisely what makes it sufficiently vague as to preclude criminal prosecution.

The question asking about eye or vision trouble invites the same confusion. Someone who once had a bug fly into an eye while riding a bicycle and had to stop to remove it has had eye or vision trouble. Is it proper to check the "No" box? Reasonable people might offer different answers, but criminal prosecutions should not depend upon those differing answers. (And at the very least, a prosecution should not be contingent upon which person or entity one has recently offended in an unrelated civil lawsuit.)

The FAA itself has expressed concerns about the vagueness of the Form in the past. The Broderick Memorandum, a 1987 FAA document, noted that the FAA needed to "think about changing the form and substance of the questions asked in" Form 8500–8, in part because the "vague, qualitative, and evaluative nature of these questions" has made difficult the prosecution of people in the past.[7]

---

5. "Dizzy Izzy" is a contest, often put on between innings of baseball games, in which two spectators are invited down to the field, where they place their foreheads on top of a baseball bat standing on the ground and then circle the bat a number of times, after which they must run in a straight line down the field.

6. The question may mean: "Do you think you have ever had a mental disorder?" It is also capable of meaning "Have you been diagnosed with a mental disorder?"

7. The government asserts that the Memo is only about "drug convictions" and "alcohol-related driving convictions," and that the Memo is "silent on the topic of medical histo-

Because the questions are confusing and capable of various meanings, we do not think a conviction based on answers to those questions is consistent with someone's protected Due Process rights—the questions invite the arbitrary deprivation of liberty interests by selective enforcement.

We are bound by the Supreme Court's instructions on vagueness as it pertains to criminal convictions. "Vagueness is constitutionally problematic when a criminal statute either 'fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits[, or] may authorize and even encourage arbitrary and discriminatory enforcement.'" *City of Chicago v. Morales,* 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (citing *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). It is not our conclusion that 18 U.S.C. § 1001 is "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." Rather, the Form that served as the basis for the false statements is so vague that a conviction based thereon "fails to meet the requirements of the Due Process Clause." *Id.* at 56, 119 S.Ct. 1849. The Constitution does not permit the government to "set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *United States v. Reese,* 92 U.S. 214, 221, 23 L.Ed. 563 (1875).

Here, the broad sweep of the language in the Form violates the requirement that the government "establish minimal guidelines to govern law enforcement." *Morales,* 527 U.S. at 60, 119 S.Ct. 1849 (internal quotation marks omitted). Given the unusual circumstances in which this case arose, we are particularly leery of permitting prosecutors to use the criminal laws as part of a "standardless sweep ... to pursue their personal predilections." *Kolender,* 461 U.S. at 358, 103 S.Ct. 1855 (internal quotation marks omitted). As the defendant notes, everyone has been dizzy in their life (perhaps by playing childhood games) and everyone at some point has headaches or anxiety. If all applicants answered yes to these questions, the government would be forced to engage in extensive and often unnecessary medical exams. Even Dr. Silberman, the senior flight surgeon of the FAA, stated that Form questions left it "up to the airman" to report certain conditions. Thus, any prosecution on the basis of such questions would necessarily be arbitrary.

Our holding that the Form does not survive constitutional vagueness scrutiny is bolstered by the conclusions of our sister Circuit, which has similarly found unacceptable convictions arising from false statements from this Form.[8] *See United States v. Manapat,* 928 F.2d 1097 (11th Cir.1991). Although that decision focused on questions about prior convictions, the Eleventh Circuit saw questions on that Form as fundamentally ambiguous, therefore precluding criminal prosecutions under Section 1001.[9] Specifically, the Eleventh Cir-

---

ry questions of Form 8500–8." Its references to vagueness are therefore inapposite, claims the government. We disagree. It is true that the Memo mentions questions about convictions, but the Memo in no way indicates that the questions that are vague are limited to those about convictions. The comment about vagueness is in the last and separate paragraph. [*See* Supplemental Excerpts of Record at 145.]

8. There are some very minor (and for our purposes, irrelevant) differences between the FAA Form under consideration in *Manapat* and the one here.

9. It is worth noting that the questions sparking the controversy in *Manapat,* which asked respondents about prior convictions, required answers that are far more objective than whether someone has or had a mental disorder or vision trouble.

cuit said "the government may not provide someone with a confusing and ambiguous form and then prosecute when the answers are inaccurate." *Id.* at 1102. We agree.

**REVERSED.**[10]

---

**10.** Because we reverse the conviction, we refrain from addressing Culliton's suggestion that the criminal prosecution was improper before the FAA took administrative action.

