**Edmund Y. CHEIN, Petitioner–Appellant,**

v.

**Richard SHUMSKY, Chief Probation Officer LA County; California State Attorney General, Respondents–Appellees.**

No. 01–56320.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 2, 2002.

Filed March 14, 2003.

Charles M. Sevilla, Cleary & Sevilla, San Diego, CA, for the petitioner-appellant.

Brentford Ferriera (brief) and Matthew G. Monforton, Deputy District Attorneys, Los Angeles, CA, for the real party in interest, State of California.

Before FERNANDEZ, RAWLINSON, Circuit Judges, and SHEA,* District Judge.

Opinion by Judge RAWLINSON; Partial Concurrence and Partial Dissent by Judge SHEA.

## OPINION

RAWLINSON, Circuit Judge:

Edmund Chein ("Chein") appeals the district court's denial of his habeas petition filed pursuant to 28 U.S.C. § 2254, chal-

---

* The Honorable Edward F. Shea, United States District Judge for the Eastern District of Washington, sitting by designation.

lenging his conviction following a jury trial on three counts of perjury.

Chein asserts that he was deprived of his due process rights under law when: (1) the judge who presided over one of the underlying civil trials testified in Chein's perjury trial; and (2) the prosecutor repeatedly referred to the facts of the underlying case in violation of an express ruling by the court. Chein also contends that there was insufficient evidence to support the perjury convictions. Because Chein's due process claims were procedurally defaulted and there was sufficient evidence to support a finding of perjury as to one of the statements, we AFFIRM the district court's dismissal of Chein's habeas petition.

## I. *Background*

Chein faced perjury charges as a result of his testimony in a personal injury trial and his response to an interrogatory in a different civil case.

Count 1 of the Information charged Chein with testifying falsely that "he was a specialist in orthopedic surgery."

Chein's specific testimony was this:

Q: Then when the residency ends, am I correct, in layman's terms, you're a regular doctor; right?

A: No. You are a specialist.

Q: You were a specialist following that—

A: Training period.

Q: —Training period? And your specialty, what would be the correct designation?

A: Physical medicine and orthopedic surgery.

.     .     .     .     .

A: If a doctor wants to specialize in a field, then they have to spend another four to five years, depending on a spe-

cialty, in a program called residency in a medical school affiliated hospital. And upon finishing that residency or specialty training program then he goes out and practices as a specialist.

Q: And did you receive your specialty qualifications?

A: Yes.

Q: What field is that specialty, Sir?

A: I'm board certified in December 1988 in—by the American Board of Orthopedic and Neurological Surgery.

Count 2 charged that Chein committed perjury when he testified that "he had one office location on October 9, 1989 and October 30, 1990 to November 2, 1990." Chein testified particularly as follows:

Q: Doctor, how many office locations do you have now?

A: One.

Q: How many did you have on October the 9th, 1989?

A: One.

These two counts stemmed from a personal injury trial where Chein testified as a treating physician.

Count 4 of the Information charged that Chein committed perjury when he testified "that he attended and received a medical degree from American University School of Medicine in Florida."

Chein provided the following response to an interrogatory:

"State:

a) the name and address of each school or other academic or vocational institution you have attended beginning with high school;

b) the date you attended;

c) the highest grade level you have completed;

d) the degree received."

Chein's response was "American University School of Medicine, Florida, 1979–1980 M.D."

The judge who presided over the personal injury civil trial testified during Chein's perjury trial. Although Chein filed a motion in limine prior to trial seeking exclusion of the judge as a witness, Chein failed to object to the judge's testimony at trial on the same basis (violation of due process) that he now asserts on appeal.

Chein also objected to the prosecutor's delving into the facts of the underlying personal injury case. Despite the court's sustaining of Chein's objection, the prosecutor made several references to the facts of the underlying case. Chein objected to the references on relevancy grounds.

Chein appealed to the California Court of Appeal, which affirmed his conviction. The California Supreme Court denied Chein's petition for review. Chein then filed the federal habeas petition that is the subject of this appeal.

## II.  *Standard of Review*

Our review of the district court's decision to deny habeas relief is *de novo. Melendez v. Pliler*, 288 F.3d 1120, 1124 (9th Cir.2002). The district court's factual findings are reviewed for clear error. *Id.* Under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, we will "grant habeas relief to a person in state custody only if the decision was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, or the claimed constitutional error resulted in a decision that was contrary to, or involved an unreasonable application of, clearly es-

tablished Federal law, as determined by the Supreme Court of the United States." *Id.* (citations omitted).[1]

## III.  *Discussion*

### A.  *Procedural Default*

#### 1.  Testimony of the civil trial judge

Prior to the perjury trial, Chein filed a motion in limine objecting to the judge's appearance as a witness. Chein challenged admission of the judge's testimony on the bases of relevance and prejudice. Chein proffered no due process objection. In his motion for a new trial, Chein noted that admission of the trial judge's testimony resulted in an "unfair trial." However, Chein again failed to explicitly interpose a due process objection.

The California Court of Appeal ruled that Chein's constitutional challenge to the judge's testimony was "waived, forfeited, and procedurally defaulted" because Chein never raised constitutional objections before the judge presiding over Chein's perjury trial.

■ In order to find Chein's claim procedurally defaulted, we must determine whether an "independent and adequate state [procedural] ground" exists to support the state's court procedural bar. *Bennett v. Mueller*, 296 F.3d 752, 755 (9th Cir.2002). To constitute an adequate procedural bar, a state court procedural rule must be "clear, consistently applied, and well established at the time of the petitioner's purported default." *Melendez v. Pliler*, 288 F.3d at 1124 (citation omitted).

■ We have previously ruled that California's "contemporaneous objection rule," which requires objection at time of trial to preserve an issue for appeal, is an ade-

---

1. Because the California Supreme Court issued a summary denial of Chein's Petition for Review, we review the California Court of Appeal decision as the last reasoned decision of the state courts. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir.2000).

quate procedural bar. *See Hines v. Enomoto,* 658 F.2d 667, 673 (9th Cir.1981). Our decision in *Melendez v. Pliler* is not to the contrary. In that case, we simply recognized that "there are no California cases holding that the [contemporaneous objection] rule is applied consistently in situations in which an objection *is* made but the trial court in its discretion declines to consider it on the merits." 288 F.3d at 1125 (emphasis in the original). In Chein's case, the trial court ruled on the merits of the objections made by Chein. Unfortunately for Chein, his objections at the time of the perjury trial did not include the due process challenge presented on appeal. Chein's failure to make a contemporaneous due process objection to the testimony of the trial judge bars pursuit of the due process challenge on appeal. The California Court of Appeal's ruling to that effect was not an unreasonable application of clearly established Supreme Court precedent on procedural default. *See Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (finding that exhaustion of state remedies requires that a petitioner assert his constitutional claims in state court).

### 2. Prosecutor's reference to the facts of the underlying civil trial

Prior to the start of the perjury trial, the district court referred to rulings it had made off the record. In seeking to clarify the court's prior rulings, Mr. Chein's counsel stated:

"As I understand the ruling, it basically was that the totality of the [personal injury] case, we are not going to retry it here ..."

The Court replied:

"I think we're very clear on that."

However, the prosecutor almost immediately delved into the facts of the underlying case:

[Prosecutor]:

The limousine stopped again and was rear-ended by the Plymouth. A trial resulted, a lawsuit in which the two occupants of the limousine alleged personal injuries as a result of being rear-ended by the Plymouth.

They sued the driver of the Plymouth and the employer of the driver of the Plymouth ... In that personal injury lawsuit, there was testimony on each side. Every issue was contested. In fact, the very fact of whether or not the accident occurred was contested.

. . .

[The Court]:

Please confine your remarks to the evidence of the charges before the court. We're not going to retry the civil matter.

The prosecutor continued:

We will present to you evidence that this Defendant lied because he was an expert witness, in quotes, so to speak in the personal injury lawsuit that arose from that accident. There were issues, many issues in that lawsuit, and the [sic] were claiming resulted from the accident the lawsuit was about. One of the Plaintiffs testified as the first witness. After he testified on direct examination, you're going to learn from testimony at this proceeding that the defense attorney cross-examined him—

[Defense Counsel]:

Objection Your Honor. *It's not relevant to this case.*

(Emphasis Added).

[The Court]:

Counsel, we're talking about trying another case. The issue is, were these statements true, are they true or not

true. If you would confine your opening statement to that.

[Prosecutor]:

Certainly.

We are going to present to you evidence that there were other accidents that those plaintiffs were involved in; ... that the defense that was being put on by the defense attorneys was that the entire accident was a setup, a scam.

[Defense Counsel]:

Your Honor, I'm going to object. This has nothing to do with this case.

[The Court]:

Sustained. Counsel, the complaint alleges statements of qualification, medical training and background. That's the issue.

[Prosecutor]:

... As I mentioned, we'll present evidence that in the [personal injury] case, one of the issues was that the whole case was a setup, a scam.

[Defense Counsel]:

Objection, Your Honor. *That's irrelevant.*

[The Court]:

Counsel, we've already discussed this matter. We're not going to go into that area. *That is not going to be relevant in this case.*

(Emphasis Added).

Following the completion of opening statements, defense counsel expressed "concern" about the prosecution's opening statement. The court chastised the prosecutor and expressed its inclination to instruct the jury to "disregard comments that this case may involve a set-up accident and/or fraud." The court agreed with defense counsel that "in labeling the operation as somehow fraudulent I think [sic] goes beyond the bounds of what you need to prove ... the truth of these charges.

*So it's probably not going to be relevant."* (Emphasis Added).

True to his expressed intentions, the court gave the following curative instructive to the jury when court resumed the following day:

... [Y]esterday, during the course of the opening statements, you heard mention of the words "fraud" and "set-up automobile accident," and this case does not involve your contemplation of any of those issues and you are to disregard and treat as though you had never heard any mention of any of those items.

Unfortunately, the prosecutor strayed from the judge's ruling yet again. During closing argument, the prosecutor made the following statement:

... If every case, every frivolous claim went to a jury ... And wasn't that in fact the defense in the [personal injury] case, that the whole claim is bogus ...

[Defense Counsel]:

Objection. I thought we had discussion about this.

[The Court]:

We're not trying the [personal injury] case, counsel ...

Once the jury retired, defense counsel noted for the record that "the problem [he] anticipated happened during the closing argument ..." The court responded that it "admonished [the prosecutor] to move on."

The jury instructions contained the following statements of law pertinent to this claim:

1) [S]tatements made by the attorneys during the trial are not evidence;

2) Do not consider for any purpose any offer of evidence that is rejected by the court. You must treat it as though you had never heard it;

3) [A]n opening statement by the attorney is not evidence; and

4) [Y]ou must determine the facts from the evidence received in this trial and not from any other source.

As with his objection to the judge's testimony, Chein objected to the prosecutor's comments only on the basis of relevancy. As a result, Chein's due process challenge as to the prosecutorial misconduct assertion also falls victim to California's contemporaneous objection requirement. *See Hines,* 658 F.2d at 673 (recognizing that a habeas petitioner's failure to comply with a state's "contemporaneous objection" requirement results in procedural default).

Because Chein's due process claims were procedurally defaulted, we AFFIRM the district court's denial of Chein's habeas petition on those grounds.

B. *Sufficiency of the Evidence*

There is sufficient evidence to support a conviction if, construing the evidence in the light most favorable to the prosecution, a reasonable juror could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Yoshida,* 303 F.3d 1145, 1149 (9th Cir. 2002).

■ Perjury occurs when an individual provides an answer to a question under oath, that is literally untrue, and not merely "misleading by negative implication." *Bronston v. United States,* 409 U.S. 352, 353, 359–60, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973).

We have recently interpreted *Bronston* to preclude a perjury conviction if the allegedly perjurious answer is in response to a question that is "excessively vague or fundamentally ambiguous." *United States v. Culliton,* 300 F.3d 1139, 1141 (9th Cir. 2002) (citations and internal quotation marks omitted); *see Chia v. Cambra,* 281 F.3d 1032, 1037 (9th Cir.2002) (stating that Ninth Circuit case law may be persuasive

authority for determining what Supreme Court precedent is clearly established).

■ In contrast, "[i]f we determine that the questions were only arguably ambiguous or not ambiguous at all," the perjury determination must be made by the jury. *Culliton,* 300 F.3d at 1141 (internal quotation marks omitted).

■ The crime of perjury also contains a materiality element, the absence of which precludes a finding of perjury. *See People v. Kobrin,* 11 Cal.4th 416, 45 Cal. Rptr.2d 895, 903 P.2d 1027, 1028 (1995). With those strictures in mind, we examine the three counts of which Chein was convicted.

Count 1 of the Information charged Chein with testifying falsely that "he was a specialist in orthopedic surgery."

It is undisputed that Chein was board certified by the American Board of Orthopedic and Neurological Surgery. Although the relative credibility of Chein's certifying board was challenged, the fact of Chein's certification rendered his statement literally true, thereby precluding a finding of perjury under *Bronston.*

Additionally, the prosecution's witness conceded that whether Chein could call himself a specialist in orthopedic surgery was a matter of semantics. Specifically, according to the prosecution witness, "[i]t would be okay to say, 'I have training in orthopedic surgery,' but it would not be okay to say, 'I'm a specialist in orthopedic surgery ...'" Even viewing the evidence in the light most favorable to the prosecution, such semantic hair splitting is insufficient to sustain a perjury conviction beyond a reasonable doubt.

■ Count 2 of the Information charged that Chein committed perjury when he testified that "he had one office location on

October 9, 1989 and October 30, 1990 to November 2, 1990."

Chein was asked: "how many office locations do you have now," [October 30–November 2, 1990] and "[h]ow many did you have on October 9th, 1989?" To both questions, Chein replied, "One."

Both questions were unambiguous, or at worst "arguably ambiguous," making it appropriate to leave the perjury determination to the jury. *See Culliton*, 300 F.3d at 1141 (citations omitted). Additionally, the number of Chein's office locations was material to his credibility as a treating physician in a personal injury case. A physician who operates out of a number of office locations is subject to the assertion that he functions as a "personal injury mill" rather than as a legitimate practitioner. *See* Louis J. Papa & Anthony Basile, *No–Fault Insurance Fraud: An Overview*, 17 Touro L.Rev. 611, 613 (2001) (referring to medical practitioners as potential participants in the "personal injury mill").

The evidence offered to prove the falsity of Chein's testimony on the number of his office locations was taken from 3780 Chein's deposition dated October 9, 1989. On that date, Chein gave the following testimony regarding his office locations:

Q: Do you practice out of any other location at the present time?

A: Yes.

Q: What other locations?

A: I have a Southgate location, a Carson location and a Long Beach location.

Viewing the evidence in the light most favorable to the prosecution, a reasonable juror could conclude that Chein's testimony at trial that he only had one office location was materially false. *See People v. Post*, 94 Cal.App.4th 467, 114 Cal. Rptr.2d 356, 361, 365 (2001) (reviewing the evidence that was before the jury in order to determine whether a perjury conviction was supported by sufficient evidence); *Kobrin*, 45 Cal.Rptr.2d 895, 903 P.2d at 1031 (holding that the determination of materiality in perjury cases is a question of fact to be decided by the jury).

Count 4 of the Information charged Chein with falsely responding to an Interrogatory by averring that the medical school he attended was in Florida, when in fact the medical school was sited in the Caribbean. Chein responded that the schools' mailing address was in Florida and, therefore, his response was literally true. We need not determine whether Chein's statement was literally true, however, because even if false, the statement lacks materiality. This statement was made in the context of a contractual dispute between Chein and an associate regarding accounting practices in connection with patient files. There is no evidence in the record that the location of Chein's medical school was material to any of the issues in the case. Absent materiality, there is insufficient evidence to support a perjury conviction. *See Kobrin*, 45 Cal. Rptr.2d 895, 903 P.2d at 1028.

### IV. *Ineffective Assistance of Counsel Claim*

We agree with the district court that Chein's brief references to ineffective assistance in his Reply Brief to the California Court of Appeal and Petition for Review to the California Supreme Court were insufficient to preserve those claims for habeas review. *See Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir.2001) (stating that when a petitioner has not presented the operative facts and legal theory upon which his claims are based to the state court, he has not preserved those claims for habeas review).

### V. *Conclusion*

Chein's claims that admission of the judge's testimony and misconduct on the

part of the prosecutor resulted in a violation of his due process rights were procedurally defaulted.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support only the perjury count set forth in Count 2 of the Indictment, which charged that Chein testified falsely regarding the number of office locations he had. Nevertheless, the existence of one sustainable perjury count renders Chein's conviction valid. *See United States v. Barron,* 172 F.3d 1153, 1160 (9th Cir.1999).[2] The state court's decision affirming Chein's conviction was not an unreasonable application of clearly established Supreme Court precedent. Accordingly, we AFFIRM the district court's dismissal of Chein's habeas petition.

AFFIRMED.

SHEA, District Judge, Dissenting in part and concurring in part:

For Defendant Chein's claims of insufficiency of evidence to sustain his conviction, I concur with the majority that the trial evidence as to Counts 1 and 4 was insufficient to support convictions for perjury. However, I dissent from the majority's view of the sufficiency of the evidence on Count 2 and would reverse the district court's denial of Chein's petition for a writ of habeas corpus and remand to the district court with instructions to enter judgment granting a writ of habeas corpus directing the release from custody of Chein. This is surely the more desirable result for Dr. Chein but I find it necessary to also dissent on the following issue which would result in his being given a new trial, though one without a sitting judge testifying as an expert for the prosecution.

For Defendant Chein's claims of due process violation—permitting a sitting Superior Court judge to testify as an expert for the prosecution in a criminal case and the misconduct of the prosecutor—I would reverse the finding of procedural default, and remand to the district court with instructions to enter a judgment granting a conditional Writ of Habeas Corpus directing the release of Chein unless the State of California begins trial proceedings within 120 days of the issuance of the mandate.

## I. DISCUSSION

It is unnecessary to recite a background of the case as it is fairly set out in the majority opinion. However, it may help with an understanding of the history of this case to note that Dr. Chein was called as a medical expert and treating physician by the plaintiff in a state court personal injury case. The judge presiding at that trial was so impressed by the cross examination of Dr. Chein that he took the case from the jury. RT 576; ER 106. He later referred to the county prosecutor the issue of whether or not to charge Dr. Chein with perjury. CT 356, quoting from the personal injury trial at RT 206. The record does not provide any information as to whether the referring judge volunteered to be an expert witness on the issue of materiality of the targeted testimony or whether the county prosecutor requested him to do so. Regardless, he was called by the prosecution and over the objection of the defendant, was permitted to testify.

This dissent will discuss the two issues in reverse order beginning with the issue of procedural default.

### A. *Procedural Default*

Moving directly then to the issue of procedural default, to sustain a finding of

---

**2.** There was no suggestion in the record or during oral argument that Chein's sentence would have been different if he had only been convicted on one of the perjury counts.

procedural default, the waiver of a constitutional claim must be based on independent and adequate state law grounds. Specifically, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The state law ground is "independent" if it is not interwoven with federal law. *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir.2001). For the law to be "adequate," it must be "clear, consistently applied, and well-established" at the time of the purported default. *Calderon v. U.S. Dist. Ct.*, 96 F.3d 1126, 1129 (9th Cir.1996) (citations omitted), *cert. denied*, 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997).

We have held that California's contemporaneous objection rule is independent and adequate in some cases. *See, e.g., Bonin v. Calderon*, 59 F.3d 815, 842–43 (9th Cir.1995) (sustaining state court's finding of procedural default where defendant failed to make *any* objection at trial). However, the recent decision in *Melendez v. Pliler*, 288 F.3d 1120 (9th Cir.2002), is instructive. "We held more than twenty years ago that the rule is consistently applied when a party has failed to make *any* objection to the admission of the evidence." *Id.* at 1125 (citing *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir.

1981)). "However, there are no California cases holding that the rule is applied consistently in situations in which an objection *is* made but the trial court in its discretion declines to consider it on the merits." *Id.* Based on this distinction in the adequacy of California's contemporaneous objection rule, the rule is inadequate as applied to the facts of this case.

In a pre-trial motion, defense counsel moved to exclude the judge's testimony, and offered to stipulate to the factual events in the preceding personal injury case, arguing that the prosecution's use of the judge in the preceding personal injury trial as an expert on materiality was "highly prejudicial without any countervailing relevance." Excerpts of Record (hereinafter "ER") at 11, 181. This expert witness on materiality was the same judge who had referred to the prosecutor the question of whether specific testimony of Dr. Chein in the personal injury trial warranted prosecution for perjury. At trial, defense counsel properly objected to a series of flagrantly prejudicial statements in the prosecutor's opening and closing statements which were sustained.[1] Counsel also objected several times to extraneous comments from the judge testifying as to his opinion of the nature of the civil proceeding before him, which impinged generally on the Defendant's character, or his belief that the Defendant was lying.[2] The morning after the judge's testimony, coun-

---

1. These are contained in section III A. 2 of the majority opinion.

2. For example, when asked whether the board which certified the Defendant was approved by the American Medical Association, the Judge responded "it's a phony board." Counsel's objection was overruled, but the Judge was instructed to respond either yes or no. ER at 97. Asked to explain an attorney's attempt to impeach Dr. Chein, after extensive comments, the Judge added:

What happened here was, there was another case, another personal injury case where Dr. Chein had been a witness and his deposition was taken and [the attorney] got ahold of that deposition and he was obviously aware that there was different testimony from Dr. Chein—
Mr. Braun: Objection, your honor, calls for conclusion.
The witness: I'm sorry.
The Court: all right.
ER at 102.

sel brought a motion for mistrial, making extensive comments on the problematic nature of the evidence. ER at 113–24. During argument on that motion, the prosecution raised the contemporaneous objection rule. ER at 119. In response, counsel stated "sometimes you have to object to preserve your right at that very moment, but sometimes it's a situation, especially with a judicial officer, where ... testimony is of such a nature that it's so egregious that it denies the defendant a fair trial. So its plain error." ER at 121. The court took the motion under submission. ER at 124.

After the case was submitted to the jury, the court heard argument on Defendant's motion for a mistrial.[3] Counsel specifically stated that to have a judge express an opinion on materiality deprived the defendant "of the U.S. Constitutional right to a jury trial of that issue." ER at 12, 181. In the written motion, counsel argued that "the combination of[the judge's] testimony and the prosecutor's refusal to obey the court's simple rulings resulted in Dr. Chein receiving an unfair trial and he should be granted a new trial." ER at 14. Counsel argued that "I don't think he got a fair trial on the totality of the circumstances." ER at 182. The Court ruled that "I'm not persuaded that a new trial should be granted on the grounds that have been stated." ER at 183.

When the violation involves fundamental constitutional rights such as those involved here, with *some* objections and motions explicitly stating the constitutional basis of the objections, the contemporaneous objection rule has not precluded the California Supreme Court from granting relief. *See, e.g., People v. Vera,* 15 Cal.4th 269, 276, 62 Cal.Rptr.2d 754, 934 P.2d 1279 (1997) (per-

mitting review of "certain fundamental, constitutional rights" despite lack of objection); *People v. Rodrigues,* 8 Cal.4th 1060, 1132, 36 Cal.Rptr.2d 235, 885 P.2d 1 (1994) (reviewing claim where failure to request jury instruction involved a "substantial right"); *People v. Livaditis,* 2 Cal.4th 759, 775 n. 3, 9 Cal.Rptr.2d 72, 831 P.2d 297 (1992) (finding rule satisfied when defendant's general objections to evidence were overruled); *Hale v. Morgan,* 22 Cal.3d 388, 394, 149 Cal.Rptr. 375, 584 P.2d 512 (Cal.1978) (liberally construing attempts to raise due process objection at trial); *People v. Blanco,* 10 Cal.App.4th 1167, 1173, 13 Cal.Rptr.2d 176 (1992) (noting discretionary consideration of due process claim when significant issue is raised); *People v. Truer,* 168 Cal.App.3d 437, 441, 214 Cal. Rptr. 869 (Cal.Ct.App.1985) (finding discretionary review of constitutional arguments not raised below, where purely legal issue is raised). Faced with an unprecedented situation with a sitting state court judge called by the prosecution as an expert witness on the issue of materiality in a perjury case, the objections made by counsel were specific enough to fairly present the constitutional claims. Because Defendant did make general objections and a motion for mistrial, both identifying and implicating constitutional rights to a jury trial and to a fair trial, I would hold that procedural default does not apply to these claims and that on the merits the Defendant has been denied his right to a jury trial and to a fair trial as guaranteed by the Fourteenth Amendment.

**B.** *Testimony of a trial judge as an expert witness in a criminal case and prosecutorial misconduct.*

I certainly do not criticize the judge in the personal injury case for referring the

---

**3.** It is unclear from the Excerpts of Record whether this was the same motion the court

had earlier taken under advisement, or a subsequent motion for new trial.

question of perjury to the prosecutor; presumably the judge believed it to be his duty. That said, the decision of the court in the criminal case to permit the trial judge from the personal injury case to be called by the state as an expert on the element of materiality in a perjury case was a fundamental constitutional error. In *Merritt v. Reserve Insurance Co.*, for example, the California Court of Appeals held:

We think it prejudicial to one party for a judge to testify as an expert witness on behalf of the other party with respect to matters that took place before him in his judicial capacity. In such instance the judge appears to be throwing the weight of his position and authority behind one of two opposing litigants. The Evidence Code absolutely prohibits the judge presiding at the trial of an action to testify as a witness over the objection of a party. We think it only slightly less prejudicial when a judge expresses his opinion as a witness about events that occurred in an earlier trial over which he · had presided.

*Merritt*, 34 Cal.App.3d 858, 883, 110 Cal. Rptr. 511 (1973). While *Merritt* addressed a judge's testimony given in a subsequent civil case, the danger of violation of fundamental constitutional rights is magnified when it is offered in a criminal case.

Similarly, in *Commonwealth v. Connolly*, 217 Pa.Super. 201, 204–06, 269 A.2d 390 (1970), the Pennsylvania Superior Court reversed a conviction where the defendant's credibility had been impeached by evidence of prior convictions, presented through testimony of the trial judge presiding over the prior cases. That court noted that typically evidence of prior convictions is introduced through records. *Id.* at 204, 269 A.2d 390. The defendant had stipulated to the admissibility of records of his prior convictions. *Id.* Nonetheless, the trial court permitted the prosecution to call the trial judge to present this evidence, who stated that the defendant's case had been a "nuisance to him," and that he had a "minor altercation with defense counsel." *Id.* at 205, 269 A.2d 390. The Superior Court reversed the conviction for unfair prejudice, finding that the testimony impermissibly suggested that the defendant had a generally bad character:

The jury would likely wonder why the witness specifically remembered this case out of the great number he had been associated with ... [o]f course, the extraneous testimony complained of was not that of any witness, but that of an eminent judge. It was established before the jury that he was President and Administrative Judge, a jurist of long experience. If [defendant] was prejudiced by the testimony of any superfluous witness who volunteered objectionable comments, the prejudice was significantly multiplied by the speaker being a jurist of such magnitude. The present case was a close one, where the evidence was not overwhelming and a past conviction could easily have swayed the jury's decision.... In such a close case, where all the above factors coalesced, [defendant] was unduly prejudiced, and should be granted a new trial.

*Connolly*, 217 Pa.Super. at 205–206, 269 A.2d 390.

In this case, by calling the civil case trial judge as an expert on materiality, the State was permitted to elicit his education, training, experience as a lawyer and the fact that he was an experienced California Superior Court judge. Specifically, the jury heard that the judge was an honors graduate of a prestigious law school, a Superior Court judge, a member of several committees on criminal law, taught and

lectured extensively, and had won several awards as a judge. ER at 94–95. A review of the judge's testimony presents a picture of an articulate and determined witness.[4] For example, the judge interjected comments such as being upset "when I found out what was going on," referring to Dr. Chein's board certification "that wasn't the legitimate board ... it was this outfit in Las Vegas," that it was a "phony board," and that Dr. Chein's testimony was offensive to him. ER at 97, 111–12. Discussing the impeachment of Dr. Chein in the civil case, the expert witness judge commented that it would "obviously indicate that the doctor didn't have any real experience in orthopedic surgery and that the jury shouldn't necessarily accept what he had to say." ER at 100.

Having lost his motion to prevent the judge from testifying, defense counsel did cross examine the judge and damaging testimony was elicited. In the motion for mistrial, counsel characterized impeachment of the judge as an impossible task. "I don't look forward to arguing this case quite frankly in front of this jury, pointing my finger toward [the judge] and calling him a liar and a judicial disgrace. ..." ER at 116. Further, counsel noted "it's not very easy to sit up and start dealing with a judge in front of a jury by objecting. ... I don't think you can cure that ... by an admonition about a judge or objection." ER at 121. Indeed, the defendant then faced the impossible task of asking the jury to disbelieve and disregard the expert testimony of that a sitting judge.

Throughout the judge's testimony, his answers exceeded the scope of the question, and violated the court's ruling prohibiting testimony that the prior personal injury case was a "sham." Compounding this error, the prosecutor also violated the

---

4. The following line of questioning is illustrative:

Q: By [the prosecution]: What is the materiality of the specific issue of specialization.

A: [Witness]: I'm getting to—All Right. I'm Sorry. The specialization is obviously important because it relates to the witness' ability to convince the jury that the witness is correct.

For example, if the case involves pediatrics, babies, and you happen to specialize in brain surgery and it involves a child's foot, who cares about your expertise in brain surgery? On the other hand, if the injuries involve orthopedics, the more specialization, expertise you have in orthopedic injuries becomes significant because in this case, the claimed damages were orthopedic damages.

Mr. Lopez was claiming what's called a thoracic outlet's syndrome. He was also claiming carpel tunnel syndrome. Both he and his wife were claiming soft tissue injury which they still felt after six years and they both claimed to have traumatic stress disorders.

So the fact that the doctor claimed to be a specialist in orthopedic surgery was obviously highly significant because these were purported to be severe orthopedic conditions allegedly requiring surgery in the case of Mr. Lopez who allegedly suffered from a rare orthopedic condition.

Whether you are certified by the American Board of Orthopedic and Neurological Surgery is highly relevant because there is a thing in medicine called board certified. And once again, lawyers desperately want board certified doctors. But in order to be board certified in this case, by the American Board of Orthopedic Surgery—it sort of sounds like the American Board of Orthopedic and Neurological Surgery, but is dramatically different—you have to be specialized as an orthopedic surgeon with a lengthy history of surgery. You have to sit for two days of examinations. You have to undergo peer review—

[Defense counsel]: Objection to the narrative, your honor. I think he's answered the question.

[Witness]: I'll finish it.

And so if you are board certified, it relates to, again, your ability to convince a jury.

This is not the American Board of Orthopedic Surgery. It's a completely different outfit that sits in Las Vegas, Nevada.

court's ruling by referring to the civil case as a fake accident at least five times in opening argument and predicting that the personal injury trial judge would testify that the entire civil case was "a setup, a scam." ER at 87. Despite that judge purportedly being called as an expert only on the issue of materiality, in closing argument, the prosecutor indicated that the judge believed the defendant was lying, and that the civil case was a sham, at least seven times.[5] ER 170–177. In doing so, the prosecution argued the judge's testimony as evidence of the defendant's guilt, as well as the judge's opinion of the defendant's character as a liar. Respectfully disagreeing with the majority, I would find that none of the trial court's curative instructions did or could overcome this combination of constitutional errors. Such is the mischief wrought by permitting the prosecution to call a sitting judge as an expert witness in a criminal case.[6]

Defendant was willing to stipulate to the testimony in the underlying civil proceedings, and objected that permitting the judge to testify as an expert would unduly prejudice him. ER at 12, 181. In my view, it is the high probability that a jury, in such circumstances as these, will accept the judge's testimony as compelling a verdict consistent with that testimony and will abdicate its responsibility to make an independent evaluation of the evidence of guilt that requires a prohibition against such testimony. That is what happened here. To the extent that a sitting judge provides an imprimatur on the prosecution of the case through expert testimony, the state is relieved of its burden to prove each element of the offense beyond a reasonable doubt. Moreover, with the presence of the trial judge as an expert witness for the state, the deputy prosecutor undoubtedly felt additional pressure to win the case, which may have contributed to the prosecutorial misconduct in this case and these constitutional violations.

This is not to say that a judge may never testify as a *fact* witness for the prosecution in criminal proceedings. In the case of *United States v. Frankenthal*, 582 F.2d 1102 (7th Cir.1978), the Seventh Circuit found that testimony of a sitting district judge as a percipient witness for the prosecution was not unfairly prejudicial to defendant. *Id.* at 1108. In that case, the defense called a long-time family friend and attorney as a witness, to testify

---

5. In closing the prosecutor argued,

   Judge [is] not offended by the school. He's offended by the lies. ... thank God for judges who are so repulsed by lies ... at the point in time that Edmund Chein told his lies, that judge was completely disgusted .... indeed we see that he was so disgusted by the lies that he heard ... we also see what true bias is, not the kind of righteous indignation judge [ ] felt at outright .... [judge]'s reaction to what was going on in the Lopez case was not only something that he as a judge was given power to do—because judges have that authority to say there is no evidence here, this is a bogus case, this should not go to the jury. Judges have that power, to say the jury's not going to be offended or wasted ... he had a moral obligation ... to follow through with

   that feeling of outrage that he experienced at the continued lies in the case he was presiding over.

6. The policy against judicial testimony is implicated any time a judge testifies. *See* Abramson, Leslie W., *Canon 2 of the Code of Judicial Conduct*, 79 MARQ. L. REV. 949, 977–78 (1996). Specifically, the judge may unfairly influence the fact finder, as "conferring the prestige and credibility of the judicial office on a litigant's position ... the judge ... appears to be 'taking sides.' " *Id.* Further, a "judge's testimony may be understood as an official testimonial ... and receive undue weight from the jury." *Id.* "Moreover, an attorney should not have to balance the need for zealous cross-examination against the desire not to antagonize a judge who may preside in the attorney's future cases." *Id.*

that he had given the defendant a legal opinion that monitoring telephone conversations of employees was not unlawful. *Id.* at 1104. If true, the testimony could have established a good-faith defense to wilfulness on one of the wiretapping counts charged. *Id.* at 1105. To impeach the witness, the government called the district judge previously assigned to the case to testify regarding an ex-parte meeting with the attorney, who had met with the judge to discuss postponing the trial date. *Id.* Instead of discussing scheduling, the attorney told the judge that he had a financial interest in the Defendant's business and stated that a trial would jeopardize negotiations for the sale of the business and bring financial harm to various companies and their employees. The judge thereafter wrote a letter of recusal to the parties in the case summarizing the conversation. *Id.*

At trial of the defendant, the judge was called to testify as a *fact* witness to impeach the attorney's credibility. On appeal, the Seventh Circuit found no unfair prejudice in the testimony of the judge. While acknowledging that "calling a judge to give testimony in any proceeding is a delicate matter," the court noted that the judge gave no testimony "as to anyone's character or reputation." *Id.* at 1108 (citing Canon 2 of the Code of Judicial Conduct, prohibiting voluntary testimony as a character witness). The defendant could have avoided impeachment by agreeing to strike the attorney's testimony, but refused to do so. *Id.* at 1107. Finally, the prosecutor made no improper use of the judge's testimony. *Id.* Given careful safeguards to protect the defendant's rights, there was no unfair prejudice, because the judge's testimony was limited to "factual knowledge that was highly pertinent to the jury's task, and he was the only possible source of that knowledge." *Id.*

In this case, by contrast, each factor absent in *Frankenthal* is present here. The judge, called as an expert on materiality by the prosecution, gave answers and interjections which presented a negative opinion of the Dr. Chein's character. The Defendant attempted to enter a stipulation to avoid the proposed judicial testimony, but those efforts were rejected. The prosecutor misused the judge's testimony in opening and closing argument by indicating that Dr. Chein was a "liar" and part of a "sham" proceeding, and attributing those views to the judge. Most importantly, the judge was called not as a fact witness, but as an expert for the prosecution. The state could have called any non-judicial expert on the issue of materiality, such as a law professor. Consequently, the judge was not the only possible source of testimony on the issue of materiality.

On habeas review of this case, "[the] issue is not whether introduction of [the evidence] violated state law evidentiary principles, but whether the trial court committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process." *Jammal v. Van de Kamp,* 926 F.2d 918, 920 (9th Cir.1991) (citing *Reiger v. Christensen,* 789 F.2d 1425, 1430 (9th Cir.1986)). Thus, a denial of due process is "the failure to observe that fundamental fairness essential to the very concept of justice ... we must find that the absence of fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941) (admitting coerced confession into evidence violates due process).

The Defendant argues that the constitutional error in this case is structural error, and therefore not subject to harmless error analysis. I agree. Permitting a sit-

ting judge to testify as an expert for the prosecution in a criminal case is not "simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Rather, it results in "a similar structural defect affecting the framework within which the trial proceeds." *Fulminante,* 499 U.S. at 310, 111 S.Ct. 1246. Applying this standard to the facts of this case, I would hold that permitting a sitting trial judge to testify as an expert for the prosecution, about matters before him in a judicial capacity, violates the Defendant's fundamental right to a fair trial and to a jury trial. Here, when combined with the repeated prosecutorial misconduct in flagrant disregard for the rulings of the criminal case trial judge, it is my view that Dr. Chein, whatever his character, was denied his constitutional right to a fair trial by a jury. Accordingly, I would reverse the finding of procedural default and remand to the district court with instructions to enter a judgment granting a conditional Writ of Habeas Corpus directing the release of Chein unless the state of California begins trial proceedings within 120 days of the issuance of the mandate.

## C. *Sufficiency of the Evidence*

As to the analysis of the sufficiency of the evidence as set out in the majority opinion, I concur that the evidence is insufficient to sustain conviction on Counts 1 and 4. However, as to Count 2, the alleged perjury regarding the number of offices, in my view, on the issue of whether or not the plaintiff in the personal injury case was injured and damaged in the incident in issue, it is immaterial whether Dr. Chein as his expert medical witness had one or more offices. Accordingly, I would hold that there was insufficient evidence to support conviction on any count and would reverse the district court's denial of Dr. Chein's petition for a writ of habeas corpus

and remand to the district court with instructions to enter judgment granting a writ of habeas corpus directing the release from custody of Dr. Chein. However, at the least, Dr. Chein should receive a new trial on Count 2, one without the constitutional defect of a sitting judge as an expert witness for the prosecution.